IDA LEVETT [ROSE L. GREENBERG, EXECUTRIX, SUB-
STITUTED PLAINTIFF] *v.* MEYER ETKIND

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued October 10—decided December 10, 1969

*Alexander Winnick,* for the appellant (plaintiff.)

*Lawrence W. Iannotti,* with whom, on the brief, was *Morris Tyler,* for the appellee (defendant).

RYAN, J. This is an action against the defendant, a physician, in which it is alleged that the plaintiff's decedent, Mrs. Ida Levett, went to the defendant's office as a patient; that she was advanced in age and infirm and used a cane for the purpose of supporting her body; and that while she was there she fell and

was injured owing to the negligence of the defendant, his agents or servants in failing to assist her in disrobing in a dressing room in the defendant's offices and in leaving her alone in the dressing room unsupervised and unattended, when they knew or should have known that if she was permitted to disrobe unattended, unaided and unsupported she would be in danger of falling. In his answer, the defendant admitted that the decedent was in his office as a patient but denied that he was negligent in any way. The defendant also pleaded by way of special defense that the decedent was offered assistance in disrobing by an employee of the defendant but refused the proffered assistance and would not allow the defendant's employee to assist her and thereby assumed any risk involved. The plaintiff denied all the allegations of the special defense. From the verdict and judgment for the defendant the plaintiff has appealed. The sole assignment of error urged in this court relates to the trial court's charge to the jury.

The correctness of the charge is determined by the claims of proof of the parties. Practice Book § 635; *State* v. *Gyuro,* 156 Conn. 391, 398, 242 A.2d 734, cert. denied, 393 U.S. 937, 89 S. Ct. 301, 21 L. Ed. 2d 274. The plaintiff claimed to have proved the following facts: Mrs. Levett, the decedent, was a very sick woman who was not capable of doing anything for herself and had to be dressed and undressed. Upon going to the defendant's office on March 26, 1962, she used a cane and had to be helped by her daughter. In 1961 the defendant admitted the decedent to Gaylord Sanitarium. She was discharged from there on August 16, 1961, with a diagnosis of chronic brain syndrome with senile brain disease, arteriosclerosis and pulmonary emphysema. She was

eighty-one years of age. The defendant examined the decedent at his office on August 29, 1961, and found her to be unstable, with a tendency to fall. He performed a Romberg test on her and found that she had a tendency to fall to her right and backwards. The Romberg test is a specific test for muscle coordination in which a person stands quietly, feet close together, eyes closed, arms at the side, and the doctor watches to determine if the person has the proper coordination. In this test of the decedent on August 29, 1961, she had fallen backwards. The defendant knew that she was feeble, that at times she was perfectly capable of dressing and undressing herself without difficulty, and that at other times she may have had difficulties. On March 26, 1962, the defendant first saw the decedent sitting in his waiting room. When she walked toward his office she was using a cane and the defendant's nurse walked beside her. The defendant advised his nurse to assist her in undressing because he thought she needed some assistance. The decedent fell in the dressing room without apparent reason. At this time the nurse was in the next room. The defendant knew that in permitting the decedent to dress or undress herself there was a possible risk involved. On the morning of March 26, 1962, the decedent appeared ill, as a chronic invalid would, but did not appear unusually feeble or weak. The defendant admitted that his judgment was wrong in permitting her to undress herself.

The defendant made the following claims of proof: On March 26, 1962, the decedent walked to the waiting room unassisted but was using a cane. She needed no physical assistance in walking or sitting or rising. The defendant never gave orders directing his nurse to insist on removing a patient's

clothes. The nurse offered to help the decedent in the dressing room to take off the top part of her clothing, but the decedent told her not to do so and that she was perfectly capable of undressing herself and demanded that the nurse leave her to undress alone. The decedent looked weak, and the nurse waited in an adjacent room with the door ajar while the decedent took about ten minutes to undress. The decedent called for the nurse, who, upon entering the dressing room, saw the decedent sitting on the floor with her feet outstretched, facing the door. She had already disrobed down to her slip. The nurse had seen the decedent on other occasions when she came for a checkup. On such visits she had never permitted the nurse to help her to disrobe. Ten minutes was not a long time for an elderly woman to require in disrobing, and the decedent needed no help to disrobe. She had undressed herself a number of times before March 26, 1962. Most women prefer to undress in private. The defendant instructed his nurse not to insist on undressing a patient if the assistance was refused. The decedent was of sound mind on March 26 and showed no signs of senility. While the decedent was undressing, the nurse did none of her other duties in the office. She remained only two feet away from the patient and did not leave her unattended. The decedent was a feeble but strong-willed individual who wanted her own way. She refused to get undressed until the nurse left the room. On that day she was mentally keen and did not appear unusually unstable. According to the standard of care and skill for the care of the feeble and infirm in doctors' offices in the community having a nurse in attendance, such patients should not be left unattended. According to the standards of care and skill in the

area, if a doctor believes a patient to be in need of assistance, the nurse is instructed to help the patient dress or undress. The defendant did not consider that there was any probability that if Mrs. Levett was left to undress herself she would fall; there was only a possibility of it.

The defendant also claimed to have proved the following: He attempted to run his office in accordance with the standard of care and skill of doctors who have a nurse in attendance in their offices. The defendant heard the decedent tell his nurse not to stay with her and that she could not undress her. On previous visits to the office the decedent had refused to let anybody dress or undress her, and she was allowed to dress herself. On March 26, 1962, the decedent described her complaints to the defendant but did not complain of dizziness or instability. On that day the defendant observed her walking unassisted to his consultation room, and, while she used a cane, she could walk eight to ten feet without using the cane. Most female patients do not want to have help in disrobing, and it is not unusual to have them refuse such assistance. As the defendant observed the patient's condition on that day, he did not believe there was much risk in allowing the decedent to undress herself unassisted. For that reason he did not believe that he should have insisted that she receive help. The defendant never noticed any tendency to instability when the decedent had her eyes open. The defendant did not think that his judgment was wrong in permitting the decedent to disrobe unassisted, in view of the fact that she had already completely disrobed on the day in question when she fell. When the nurse returned to the decedent, there were no articles of clothing on her in any unusual position, that

is, not completely on or partially off. On the day of the fall, the decedent did not tell either the defendant or his nurse what caused her to fall.

The basic claim of the plaintiff is that the standard of care to be applied in this case is not the standard applied in malpractice cases with respect to diagnosis and treatment of a patient but that of a reasonably prudent person under the circumstances. In determining the appropriate standard of care it is essential that we examine the relationship of the parties. The plaintiff alleged in her complaint and offered proof that the decedent was in the defendant's office as a patient of the defendant. This was admitted by the defendant in his answer and was included in his claims of proof. There can be no doubt therefore that the relationship of physician and patient existed. The defendant had been the decedent's family physician since 1944. The determination whether the decedent needed help in disrobing and, in the event she should refuse such help, what course of conduct to pursue called for a medical judgment on the part of the physician predicated on his knowledge of her physical and mental condition on that day. The duty of the defendant in his capacity as a physician was to exercise reasonable care, skill and diligence in treating the plaintiff as a patient. This duty was met if the defendant exercised the degree of skill and care which physicians in the same general neighborhood and in the same general line of practice ordinarily have and exercise in like cases. *Marchlewski* v. *Casella,* 141 Conn. 377, 380, 106 A.2d 466. In the ordinary action for negligence the jury can apply, unaided by experts, the standard of care of the reasonably prudent person under the circumstances. This does not apply, however, to an action for malpractice.

Since the members of the jury are laymen, they cannot be expected to know the requirements for proper medical treatment in the usual case. Under our rule, the plaintiff cannot prevail in such cases unless there was positive evidence of an expert nature from which the jury could reasonably and logically conclude that the defendant was negligent. The testimony of an expert may be dispensed with only where there is such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence. *Console* v. *Nickou,* 156 Conn. 268, 273, 240 A.2d 895; *Snyder* v. *Pantaleo,* 143 Conn. 290, 292, 122 A.2d 21; *Ardoline* v. *Keegan,* 140 Conn. 552, 557, 102 A.2d 352; *Slimak* v. *Foster,* 106 Conn. 366, 370, 138 A. 153. The plaintiff does not claim that the present case fell within that exception to the rule. The court's instructions to the jury accorded with our law applicable to a malpractice case.

The plaintiff excepted to the charge on the grounds that on the facts of this case the malpractice rule should not have been given to the jury; that expert testimony was not required as to what care should be given to a feeble and infirm person; that even if this case rests upon expert testimony it is not only the care which should be exercised by a physician but also the care which should be exercised by a nurse with which we are concerned; and that since it was the duty of the nurse rather than the duty of the doctor to assist the decedent no expert medical testimony was necessary.

We recognize the fact that the problem of acquiring expert medical testimony from which the jury may be informed of the appropriate standard of care may, at times, be a difficult one for the plaintiff. In the instant case, however, there was such testimony provided by the defendant himself, a qualified

expert. *Console* v. *Nickou,* supra, 274; *Allen* v. *Giuliano,* 144 Conn. 573, 575, 135 A.2d 904. "While the standard of care, skill and diligence is a matter of expert opinion and knowledge, the determination of the facts concerning the conduct under consideration is always for the jury." *Snyder* v. *Pantaleo,* supra, 295. The defendant offered proof that according to the standards of care and skill in this area, if a doctor believes a patient to be in need of assistance the nurse is instructed to help the patient dress or undress; that the defendant attempted to run his office in accordance with the standard of care and skill of doctors who have nurses in their offices; and that according to the standard of care and skill for the care of the feeble and infirm in doctors' offices in the community having a nurse in attendance, such patients should not be left unattended. As the defendant observed the patient's condition on that day, he did not believe that there was much risk in allowing the decedent to dress herself unassisted and for that reason he did not believe that he should have insisted that the patient should receive help. The defendant never noticed any tendency to instability when the decedent had her eyes open. He did not think his judgment was wrong in permitting the decedent to disrobe unassisted, in view of the fact that she had completely disrobed on the day in question when she fell. The plaintiff claimed that the defendant thought that the decedent needed some assistance and, for that reason, advised his nurse to help the patient to dress and undress; that the decedent had never refused help in dressing or undressing and that she did not so refuse on this occasion; and that when she fell the nurse was in another room and the decedent was unattended by anyone. On this basis the plaintiff urges that the

jury should have been instructed that the standard of care should be that of a nurse rather than the medical standard of care as between physician and patient. We are unable to agree with the claims of the plaintiff. The relationship of physician and patient existed throughout the events described, and the court properly instructed the jury on the duty of the physician to his patient. It was conceded that the nurse was the defendant's employee, and the court instructed the jury that the defendant was responsible for any wrongful conduct on her part in following his instructions as well as her failure to follow such instructions, and that any breach of duty by the nurse alone or in conjunction with the defendant doctor was chargeable against the defendant. The court's instruction was correct.

The plaintiff also excepted to the court's charge that the law does not expect from a physician the utmost degree of care or skill known or obtainable to the profession and that if a physician exercises the degree of care, skill and diligence required by the law, as defined by the court, he is not liable for a bona fide error in judgment. The plaintiff claims that the jury should have been instructed as in an ordinary negligence case that, where the danger is great, reasonable care may demand a very high degree of care. On the claims of proof, such an instruction was not required. There is no merit to either of these claims. The instruction of the court on this matter as given by the trial court has been approved many times by this court, and it was applicable to the claims of proof in this case. *Marchlewski* v. *Casella,* 141 Conn. 377, 380, 106 A.2d 466.

We turn now to the special defense wherein the defendant alleged that because the decedent refused the assistance offered her by the doctor's nurse she

assumed any risk involved. No exception was taken to the court's charge concerning this special defense, and the jury returned a general verdict for the defendant. The defendant urges that for this reason alone the verdict of the jury cannot be disturbed. *Begley* v. *Kohl & Madden Printing Ink Co.,* 157 Conn. 445, 453, 254 A.2d 907. The plaintiff disputes this claim, relying on the holding of this court in *Warner* v. *Liimatainen,* 153 Conn. 163, 165, 215 A.2d 406, wherein we said: "In the field of negligence the defense of assumption of risk is applicable only to a risk arising out of the defendant's negligence. Where, as in the ordinary case, the risk alleged to have been assumed is that of injury from an act of negligence specified in the complaint, the effect of the defense is to deny to a plaintiff against whom it is proven a recovery based upon that specification of negligence. This is so, even though that specification of negligence was proven to have been a proximate cause of that particular plaintiff's injuries." In the instant case the complaint alleged negligence on the part of the defendant in failing to assist the decedent in disrobing, and the allegation of the special defense is therefore applicable to a risk arising out of the defendant's negligence as claimed in the complaint. When, as in the instant case, there are two or more distinct defenses upon which the parties are at issue, a general verdict will stand if it can be supported on the basis of any one of them, regardless of error in the charge pertaining to the others. *Begley* v. *Kohl & Madden Printing Ink Co.,* supra; *Royal Homes, Inc.* v. *Dalene Hardwood Flooring Co.,* 151 Conn. 463, 466, 199 A.2d 698; *Labbee* v. *Anderson,* 149 Conn. 58, 60, 175 A.2d 370; *Himmelstein* v. *General Electric Co.,* 144 Conn. 433, 436, 133 A.2d 617; *Hasler* v. *T. H. Canty & Co.,* 138

Conn. 343, 346, 84 A.2d 577; *Meglio* v. *Comeau,* 137 Conn. 551, 553, 79 A.2d 187; Maltbie, Conn. App. Proc. § 56. In view of the general verdict, the jury could have found that the plaintiff was chargeable with assumption of risk.

There is no error.

In this opinion the other judges concurred.