[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION TO SET ASIDE VERDICT
On January 27, 1993 the jury returned a verdict in the case of #055405, Ellicott v. Matyas in the amount of $26,502.21, together with interest at the rate of 10% from February 8, 1991 on the sum of $14,479.30. In the companion case of 056488, Matyas v. Curcio, the jury found for the plaintiff in the amount of $15,129.30. Each defendant has filed a motion to set aside the verdict.
I. #005405, Ellicott v. Matyas
In August 1989, the plaintiffs, Marion Ellicott and Jamie L. Egan entered into a contract with the defendants, Kathy Lynn Matyas and Ralph Edward Matyas for the purchase of property located on the southwesterly side of Milton Road in the Town and County of Litchfield, containing 10.825 acres described as lot 4. The contract provided in pertinent part:
9. DEFAULT.
 A. In the event that the Purchaser is in default by reason of failure or refusal to comply with any of the terms of this contract, the Seller shall have the option either:
 1. To retain as liquidated damages all monies paid by the Purchaser hereunder in which case this contract shall terminate; or
 2. To pursue any remedy available to him in law or in equity and further recover damages due him as a result of the Purchaser's default hereunder, and during such suit to retain in escrow all monies paid by the Purchaser hereunder to be applied to any CT Page 4310 judgment, costs or fees received as a result of suit.
 B. In the event that the Seller is in default by reason of failure or refusal to comply with any terms of this contract, the Purchaser may pursue any remedy available to him in law or in equity and further recover damages due him as a result of the Seller's default hereunder, except that failure to comply by the Seller as a result of encumbrances, defects in title or loss shall be governed by the provisions of paragraphs 5 or 7 of this contract.
 The parties further agree that the party who is in default shall pay all costs and expenses incurred by the other party as a result of such other party's enforcement of this contract, including a reasonable attorney's fee.
4. CONDITION OF PREMISES.
A. Seller represents:
 1. That the plumbing, septic, heating and electrical systems will be in good working order at the time of closing of title.
 2. If the premises are served by on-site well and/or sewage disposal system, that such well and/or sewage disposal system are entirely within the boundary lines and serve no other premises; and to the best of Seller's knowledge, said well provides potable and adequate water for normal domestic household consumption and usage, and there has been no septic malfunction or breakout during the Seller's ownership.
Pursuant to the contract of sale, a closing took place on August 10, 1989. Thereafter it was discovered that while the septic tank was on lot #4, the leach fields extended over into lot #3, property owned by Helen A. Zinck. It therefore becomes necessary for the plaintiffs in this action to expend funds to relocate the septic system on lot #4. There is no issue as to the underlying sum of $14,479.30 but only as to liability.
In this case, there was ample evidence to support the jury's verdict. The contract was clear as to the representation regarding the "sewage disposal system." It also provided for reasonable attorneys fees in the event of a breach. As to the question of interest, that determination was made by the jury based upon proper instruction from the court. Nor'easter Group, Inc. v. Colassale Concrete, Inc., 207 Conn. 468, 482; Iseli Co. v. Conn. Light Power Co., 211 Conn. 133, 143. Conn. Gen. Stat. CT Page 431137-3a.
There is no basis to set aside the verdict in this case and therefore it is denied.
II. #056488, Matyas v. Curcio
The defendant, Peter L. Curcio, Jr. seeks to have the court set aside the plaintiffs' verdict in this case and enter judgment N.O.V. on the grounds that the plaintiffs failed to prove a breach of the standard of care through expert testimony. The plaintiffs' cause of action as to Mr. Curcio rests solely on the claim that Curcio negligently planned and designed the plaintiffs' subsurface septic system. The allegations of negligence are as follows:
 a) he did not correspond his drawing and measurements to the plaintiffs' actual property lines; b) he exceeded the northern boundary and/or improperly calculated or improperly located the northern boundary within his plan so that the location of the septic system was not within the plaintiffs' property boundaries; c) he failed to check and survey the location of the area designated for the installation of the septic system in order to correlate the same within the plaintiffs' boundaries; d) he failed to inspect and check the "as built dimensions" to insure the proper location of the system and to comply with the Building and Health Department regulations which required that septic systems be correctly installed on the owner's land.
The preparation, design and drawing of an engineered septic system requires training and technical expertise beyond the ordinary knowledge and experience of judges and jurors. Thus, in order to prove professional negligence, expert testimony is required. Tait LaPlante, Handbook of Connecticut Evidence, Sec. 7.16.5, and cases cited therein. In an action for professional malpractice, there must be "positive evidence of an expert nature from which the jury could reasonable and logically conclude that the defendant was negligent." Levett v. Etkind, 158 Conn. 567, 574 (1969).
In Ferrie v. Sperry, 85 Conn. 337 (1912), a case involving a property line dispute, the court required that the jury be informed through the evidence as to what the standard of care required of a professional engineer is.
 The gist of the plaintiff's cause of action stated in the first count was the negligence of the defendant in his employment as a civil engineer. Having accepted that service from the CT Page 4312 plaintiff, the defendant, as the jury were properly instructed, was bound to exercise that degree of care which a skilled civil engineer of ordinary prudence would have exercised under the circumstances of this case. . . .The jury would not know [what good engineering practice required] unless informed by evidence. . . .
Ferrie, at 343, emphasis added.
No expert testimony was offered to describe either the standard of care required of an engineer under the circumstances encountered by the defendant, or any alleged breach of that standard. This was because no expert disclosure was made by the plaintiffs prior to trial in compliance with Section 220, Connecticut Rules of Practice. Thus any offer of expert testimony was properly excluded. See Sturdivant v. Yale New Haven Hospital,2 Conn. App. 103 (1984). The jury, lacking the knowledge and expertise of a professional civil engineer, was required to resort to speculation and conjecture in order to determine the appropriate standard of care by which to assess the defendant's professional performance. The jury was advised by the fact witness, William Whynott, that he "redefined" the property line between the two properties in question, Lots 3 and 4. Moreover, they learned that this procedure was followed by Mr. Curcio and Mr. Whynott in the over 2,000 other systems with which they had been involved in the course of their careers as an engineer and surveyor, respectively. There was no testimony of any nature, fact or opinion, to suggest that "redefining" the boundary line was inadequate for the purposes required in this case. In fact, the plaintiffs' witness Arthur Howland, a land surveyor, testified that a lesser degree of accuracy was called for when preparing a septic system design, and further testified that an A-2 survey was not required for such a purpose.
The plaintiffs failed to show by expert testimony the standard of care required of a professional engineer under the circumstances encountered by Peter Curcio. Nor was there any evidence offered to prove that the defendant failed to conform to the requisite standard of care, because, again, no one testified as to precisely what that standard required. Since there was no evidence of an expert nature explaining the standard of care, any finding of negligence is not supported by the evidence, but is improperly based instead on conjecture and speculation. In concluding that the defendant was negligent, the jury made judgments regarding the professional defendant's conduct which were unsupported by the evidence and outside their realm of experience. This is what the jury cannot do, and this is normally prevented by the presentation of expert testimony, which serves to educate the jury in matters about which laypersons are unfamiliar. Ferrie, supra, at 343. The trier of fact is not permitted to CT Page 4313 find facts on a technical matter based solely on the trier's own knowledge or insight. Tanner v. Conservation Commission, 15 Conn. App. 336, 341
(1988), Tait LaPlante, Sec. 17.6.6.
Finally, Mr. Whynott and Mr. Curcio explained, by reference to a scaled drawing, that the system as installed was located in an area other than the system as designed. In fact, the plaintiff's witness Arthur Howland clearly demonstrated by his testimony that the system as originally installed in 1985 was actually constructed precisely in the location of percolation and deep pit tests which had been performed on the neighboring lot some years earlier under Mr. Howland's aegis. If indeed an error was committed in the installation and construction of the Maytas' septic system, such error is not attributable to the acts or omissions of Peter Curcio. The allegations of the substituted complaint are limited to the defendant's planning and preparation of his design. Not only did the defendant not have the duty to survey the existing property boundaries, the plaintiff cannot prove that a failure to perform a survey equals a breach of the prevailing standard. "Ordinarily, `the decision to set aside a verdict involves the exercise of a broad legal discretion of the trial court. . .'" Doe v. Manheimer, 212 Conn. 748, 756 (1989) quoting Jacobs v. Goodspeed, 180 Conn. 415, 416 (1980). This is true because "a judge is not a mere umpire in a forensic encounter, but a minister of justice." Peiter v. Degenring, 136 Conn. 331, 338 (1949).
Lacking any evidence to support a finding of professional negligence, the verdict of the jury was contrary to law, and the defendant's motion for judgment notwithstanding the verdict must be granted. For the reasons stated, the defendant Curcio's motion to set aside the verdict is granted and therefore a judgment notwithstanding the verdict shall enter.
PICKETT, J.