KATHY MATYAS ET AL. *v.* HELEN A. MINCK ET AL.

MARION F. ELLICOTT ET AL. *v.* RALPH EDWARD MATYAS ET AL.

(12528)

FOTI, HENNESSY and CRETELLA, Js.

Argued December 12, 1994—decision released March 21, 1995

*Zbigniew S. Rozbicki,* for the appellants (plaintiffs in the first case, defendants in the second case).

*Elizabeth Fairbanks Flynn,* with whom was *Lorinda S. Coon,* for the appellee (defendant in the first case).

*David P. Burke,* for the appellees (plaintiffs in the second case).

FOTI, J. These companion cases were tried together. In one, Kathy Matyas and Ralph Matyas, owners of real estate, commenced an action against Peter Curcio, a civil engineer, for negligence in the design of a sub-surface septic system.[1] In the other, Marion F. Ellicott and Jamie Eagan, subsequent purchasers of the Matyases' real estate, commenced an action against the Matyases for misrepresentation and breach of contract. The Matyases appeal from both judgments rendered by the trial court.

The jury could reasonably have found the following facts. In 1985, the Matyases contacted and hired Curcio to design an engineered septic system for a residence that the Matyes were constructing on lot four of a subdivision in Litchfield. Curcio is a civil engineer licensed to practice engineering in Connecticut and New York. After obtaining a map of the subdivision from the Matyases, Curcio went to the property on July 1, 1985, and conducted various tests. He then sent a surveyor, William Whynott, to the site to locate the property boundaries, to establish benchmarks and to plot contours. Curcio then prepared a design that showed the proposed locations for the various elements of the septic system. This plan was approved by the Torrington area health department. Curcio sent the design to the Matyases. Neither the Matyases nor the septic system installer questioned Curcio regarding the design. Curcio was not asked to oversee the installation of the system and he was not present during the installation.

[1] Originally, Helen A. Minck was a defendant in this case but the action against her was subsequently withdrawn.

The Matyases resided on their property until August, 1989, when they entered into a contract with Ellicott and Eagan for the sale of the property. When these potential buyers looked at the property, the Matyases were present and made certain representations as to the location of the septic system. The deed to the property was delivered to Ellicott and Eagan on August 11, 1989. Approximately two years later, Ellicott and Eagan learned that a portion of their septic system was located on the property of an adjoining landowner, lot three of the subdivision, when the adjoining landowner complained that a portion of the leech fields was on her property. Ultimately, Ellicott and Eagan had to install a new system. They subsequently sued the Matyases for breach of contract and for damages incurred in relocating the septic system. The Matyases, in turn, brought suit against Curcio, alleging that he had negligently planned and designed the system in that he failed to locate the boundary line accurately and designed the system to be located beyond the boundary line.

In the Matyases' suit, the jury returned a general verdict in their favor on January 27, 1993. Curcio filed a motion to set aside the verdict and for judgment notwithstanding the verdict, which the trial court granted on April 30, 1993. In the action by the subsequent purchasers, Ellicott and Eagan, the jury returned a general verdict in favor of the plaintiffs. The Matyases' motion to set aside the verdict was denied by the trial court. The Matyases have appealed from the judgments rendered in both cases. We affirm both judgments.

I

In their appeal from the judgment rendered in their action against Curcio, the Matyases claim that the trial court improperly (1) set aside the jury verdict for evidentiary insufficiency on the ground that the Matyases had failed to provide expert testimony, and

(2) set aside the jury verdict and rendered judgment notwithstanding the verdict without setting aside the judgment rendered on the verdict.

## A

The Matyases' first claim is that the trial court should not have set aside the verdict for evidentiary insufficiency. The trial court held that the Matyases "failed to show by expert testimony the standard of care required of a professional engineer under the circumstances encountered by Peter Curcic. Nor was there any evidence offered to prove that [Curcio] failed to conform to the requisite standard of care . . . . Since there was no evidence of an expert nature explaining the standard of care, any finding of negligence is not supported by the evidence . . . ." The Matyases argue that, despite the lack of expert testimony, the evidence presented was sufficient to allow the jury reasonably to find that Curcio had negligently designed the septic system. We disagree.

"The trial court possesses inherent power to set aside a jury verdict which, in the court's opinion, is against the law or the evidence." *Palomba* v. *Gray*, 208 Conn. 21, 23–24, 543 A.2d 1331 (1988). "The decision to set aside a verdict entails the exercise of a broad legal discretion that, in the absence of clear abuse, we shall not disturb. . . . Our review of the trial court's action on a motion to set aside the verdict involves a determination of whether the trial court abused its discretion, according great weight to the action of the trial court and indulging every reasonable presumption in favor of its correctness . . . ." (Citations omitted.) Id., 24. The trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their testimony. Moreover, the trial judge can gauge

the tenor of the trial, which, on the written record, we cannot, and can detect any factors that could improperly have influenced the jury. Id., 25.

Litigants, however, have a constitutional right to have issues of fact determined by a jury. *Gold* v. *University of Bridgeport School of Law*, 19 Conn. App. 379, 380, 562 A.2d 570, cert. denied, 213 Conn. 801, 567 A.2d 832 (1989). Because the trial court, in setting aside the verdict, has deprived the party in whose favor the verdict was rendered of his constitutional right to have factual issues resolved by the jury, we must examine the evidential basis of the verdict itself to determine whether the trial court abused its discretion. *Palomba* v. *Gray*, supra, 208 Conn. 25.

At trial, all parties stipulated that the septic system, as installed, went over the boundary of lot four into the adjoining lot, lot three. The dispute concerned whether this situation was the result of negligence by Curcio in his design of the system or some other factors not under his control. A review of the record shows that the Matyases failed to present any expert testimony to describe either the applicable standard of care in this case, or any alleged breach of that standard.[2]

" 'When a topic requiring special experience of an expert forms a main issue in the case, the evidence on that issue must contain expert testimony or it will not suffice.' " *Sickmund* v. *Connecticut Co.*, 122 Conn. 375, 379, 189 A. 897 (1937); *Slimak* v. *Foster*, 106 Conn. 366, 368, 138 A. 153 (1927). In cases involving claims of professional negligence, as here, expert testimony

---

[2] In its memorandum granting the motion to set aside the verdict, the trial court noted that the reason no expert testimony was offered was because no expert disclosure was made by the Matyases prior to trial in compliance with Practice Book § 220. Any offer of expert testimony was properly excluded. See *Sturdivant* v. *Yale-New Haven Hospital*, 2 Conn. App. 103, 476 A.2d 1074 (1984). This ruling has not been challenged on appeal.

is essential to establish both the standard of skill and care applicable and that the defendant failed to conform to the standard, as these matters are outside the knowledge of the jury. *Mather* v. *Griffin Hospital*, 207 Conn. 125, 131, 540 A.2d 666 (1988); *Campbell* v. *Palmer*, 20 Conn. App. 544, 548, 568 A.2d 1064 (1990). In a case against an engineer, it is incumbent upon the plaintiff to produce evidence as to what "a skilled engineer of ordinary prudence engaged in the same line of business would have exercised in the same or similar circumstances." *Goodrich Oil Burner Mfg. Co.* v. *Cooke*, 126 Conn. 551, 553, 12 A.2d 833 (1940); *Ferrie* v. *Sperry*, 85 Conn. 337, 343, 82 A. 577 (1912).

This case involved a claim of professional negligence. The issues in the case were technical. The preparation, design and drawing of an engineered septic system require training and technical expertise beyond the ordinary knowledge and experience of jurors and judges. Therefore, in order to prove professional negligence, expert testimony was required. No such testimony was presented. The Matyases made various allegations of negligence but failed to present any "positive evidence of an expert nature from which the jury could reasonably and logically conclude that [Curcio] was negligent." *Levett* v. *Etkind*, 158 Conn. 567, 574, 265 A.2d 70 (1969). Without expert testimony, the jury could not determine whether Curcio used improper techniques in calculating the boundaries of the Matyases' property, whether he should have ascertained that the area designated for the septic system was within the boundaries of the Matyases' property, or whether he should have inspected the "as built dimensions" to ensure the proper location of the system.

At trial, there was testimony that the septic system was not installed as set out in Curcio's design. The only testimony that compared Curcio's plan with his

engineered drawing and the system as it was installed was that of Curcio and the surveyor he hired, William Whynott. Both testified that the system was not installed in accordance with the design. The Matyases failed to provide any positive evidence showing that Curcio designed the system to be installed on the wrong property. They failed to show the standard of care required of a professional engineer under the circumstances encountered by Curcio. The jury, lacking the knowledge of a professional engineer, was required to resort to speculation in order to determine the appropriate standard of care by which to assess Curcio's professional performance.

The Matyases argue that this case falls within the exception to the general rule that requires that expert testimony be used to prove professional negligence. The exception provides that expert testimony may be dispensed with when "there is such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence." *Levett* v. *Etkind,* supra, 158 Conn. 574. The Matyases argue that the evidence they presented demonstrated such gross want of care or skill by Curcio that no expert testimony was required. The evidence to which the Matyases refer in their brief consists of two exhibits and the testimony of three fact witnesses.[3] The exhibits are (1) the map of the subdivision in which their lot was located, and (2) the septic system design drawn by Curcio. The Matyases argue that the jury was qualified to read maps and drawings, and, based on this evidence, it could have found that the defendant incorrectly located the property line and incorrectly selected the area for the system. We find

---

[3] These witnesses were Allan Towne, the excavating contractor, Donald Winters, the excavator's employee, and Gil Roberts, the senior sanitarian and director of the Torrington area health district. Towne and Winters testified that they took directions from Curcio regarding where the septic system would be installed, and Roberts testified, inter alia, that he observed Curcio at the site and they discussed the septic system.

this argument to be without merit. The maps and drawings to which the Matyases refer are technical documents. The process of understanding an engineered design is complex. The evidence presented did not demonstrate negligence was so obvious as to be clear to a layperson without expert assistance.

Our review of the evidence leads us to conclude that the trial court did not abuse its discretion in granting Curcio's motion to set aside the verdict on the ground that the Matyases failed to prove a breach of the standard of care through expert testimony.[4]

### B

Next, the Matyases claim that the trial court should not have set aside the jury verdict and rendered a judgment notwithstanding the verdict without setting aside the judgment entered upon the verdict.[5] We disagree.

The Matyases argue that under Practice Book § 321, a motion to set aside a verdict must request that both the verdict *and the judgment* rendered thereon be set aside.[6] The Matyases allege that Curcio did not move

---

[4] In his brief, Curcio argues that if the Matyases are successful on appeal, this court should order a new trial rather than a judgment for the Matyases on the verdict because of misconduct by the Matyases' counsel at trial. The claim is that counsel attempted to elicit expert testimony from various witnesses despite the trial court's ruling that no expert testimony could be offered, and that this unfairly prejudiced Curcio. In response, the Matyases argue that this issue cannot be raised on appeal because it was not raised in the trial court. Given our disposition of the other issues raised in this appeal, we will not review the merits of this claim.

[5] We note that this claim was not included in the Matyases' preliminary statement of issues pursuant to Practice Book § 4013 (a). Their failure to identify this issue in their preliminary statement of issues does not preclude review unless the opposing party is prejudiced thereby. See *State* v. *McIver*, 201 Conn. 559, 568 n.3, 518 A.2d 1368 (1986). Because both parties have fully briefed and argued the issue, we do not feel that Curcio would be prejudiced by our review of this issue.

[6] Practice Book § 321 provides in relevant part: "After the acceptance of a verdict . . . a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside . . . ."

to have the judgment set aside in his motion to set aside the verdict, and the trial court rendered the judgment notwithstanding the verdict without setting aside the previous judgment. On this basis, the Matyases argue that the judgment notwithstanding the verdict should be rendered null and void.

Our review of the record shows that the jury returned a verdict in favor of the Matyases on January 27, 1993. No judgment was rendered on this verdict. On January 29, 1993, Curcio filed his motion to set aside the verdict and for judgment notwithstanding the verdict. Curcio's motion requested that the court "set aside the verdict entered . . . and direct a judgment for the defendant." On April 30, 1993, the trial judge, through a written memorandum of decision, rendered a judgment. The judge granted Curcio's motion to set aside the verdict and rendered a judgment notwithstanding the verdict. Since the trial court did not render a judgment on the original verdict, it did not improperly set aside only the verdict.

The Matyases rely on *Haag* v. *Beard Sand & Gravel Co.*, 151 Conn. 125, 193 A.2d 711 (1963), as support for their position. In that case, our Supreme Court noted that it is essential that the motion for judgment notwithstanding the verdict include a request that both the verdict and the judgment rendered thereon be set aside. Id., 126. In *Haag*, a judgment had been rendered on the jury verdict prior to the filing of the motion to set aside the verdict. Here, no judgment had been rendered on the jury verdict prior to Curcio's motion to set aside the verdict. In their brief, the Matyases assert that judgment enters at the time the verdict is accepted in open court. The only authority they cite for this proposition is Practice Book § 4009. This rule discusses the time frame within which to file an appeal. For purposes of an appeal from a judgment rendered on a jury verdict where no motion to set aside is filed, the time

to appeal is deemed to run from the time the verdict is accepted in open court. This does not mean that judgment in fact enters at that moment for all purposes. In fact, Practice Book § 324 provides that "[t]he court shall render judgment on all verdicts of the jury . . . *unless* the verdict is set aside . . . ." (Emphasis added.) Our Supreme Court has repeatedly held that "the acceptance of the jury verdict at the time it is rendered is deemed to constitute a final judgment . . . unless a motion to set aside is later filed." (Citations omitted.) *Pietrorazio* v. *Santopietro*, 185 Conn. 510, 512–13, 441 A.2d 163 (1981); see also *Clime* v. *Gregor*, 145 Conn. 74, 76, 138 A.2d 794 (1958). We find the Matyases' claim that judgment entered at the time the verdict was accepted in open court to be without merit.

## II

In their appeal from the judgment rendered in Ellicott and Eagan's misrepresentation action, the Matyases claim that the trial court improperly (1) charged the jury on the law of innocent misrepresentation, (2) allowed in evidence of attorney's fees, (3) failed to charge the jury on the doctrine of merger in real estate contracts, and (4) failed to charge the jury on the doctrine of caveat emptor.

## A

In the underlying action, Ellicott and Eagan alleged misrepresentation on the part of the Matyases. Specifically, the plaintiffs alleged that the Matyases had misrepresented that the septic system servicing the property was located entirely within the boundaries of the property being sold. This claim was based on the following facts, which are supported by the evidence presented in the trial court. Prior to entering the contract for sale of the property, the plaintiffs had looked at it. The Matyases were present at the time and made representations as to the location of the septic system.

During direct examination, Ralph Matyas testified as follows: "I showed them . . . what I had done on the property. . . . I just said, 'This is where the septic is, this is where the well is.' " Also, the contract of sale executed by the parties provided in part: "Seller represents . . . If the premises are served by on-site well and/or sewage disposal system[s], that such well and/or sewage disposal system[s] are entirely within the boundary lines . . . ." Ellicott testified that she thought this representation was true at the time she purchased the property. The Matyases claimed that they believed the septic system was within their boundaries when they conveyed the land, and they had no intention of defrauding or misleading the plaintiffs.

The Matyases claim that the trial court improperly charged the jury on the elements necessary for recovery based on innocent misrepresentation. The trial court's charge was as follows: "The rule of law applicable to misrepresentations is that if a person makes a statement in regard to a matter upon which a hearer may reasonably suppose he has the means of information, and the statement is made as part of a business transaction, or to induce action from which the speaker expects to gain advantage, he should be held liable for the consequences of reliance upon the misstatement. If the [Matyases], in fact, misrepresented the location of the septic system, it does not matter that such misrepresentation was innocent, for a party is entitled to recover for the consequences of reliance upon misrepresentation even if there was no fraud or bad faith or deceit. In other words, an innocent or mistaken representation would still allow the plaintiffs to recover." The Matyases essentially claim that the instruction was incomplete because it did not state that "innocent misrepresentation may be actionable only if the declarant has the means of knowing, ought to know, or has the

duty of knowing the truth." *Richard* v. *A. Waldman & Sons, Inc.,* 155 Conn. 343, 346, 232 A.2d 307 (1967). We are not persuaded.

Our standard of review concerning claims of instructional error is well settled. "[J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . . The trial court must adapt its instructions to the issues raised in order to give the jury reasonable guidance in reaching a verdict and not mislead them." (Citations omitted; internal quotation marks omitted.) *Mauro* v. *Yale-New Haven Hospital,* 31 Conn. App. 584, 592–93, 627 A.2d 443 (1993). The test of a court's charge is not whether it is as accurate on legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. *Seperack* v. *Solaz,* 17 Conn. App. 684, 696, 556 A.2d 175, cert. denied, 211 Conn. 804, 559 A.2d 1138 (1989).

Under this standard of review, we conclude that the trial court properly instructed the jury in a manner calculated to give a clear understanding of the issue presented for its consideration. This court has long recognized liability for innocent misrepresentation. The elements of this cause of action are "(1) a representation of material fact, (2) made for the purpose of inducing the purchase, (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation by the defendant and (5) damages." *Frimberger* v. *Anzellotti,* 25 Conn. App. 401, 410, 594 A.2d 1029 (1991); *Johnson* v. *Healy,* 176 Conn. 97, 101, 405 A.2d 54 (1978). The trial court's instruction was sufficiently correct in law. It accurately described the necessary elements for a cause of action based on innocent

misrepresentation. It also was virtually a direct quotation from *Johnson* v. *Healy*, supra, 101, a case in which our Supreme Court discussed the theory of recovery based on innocent misrepresentation.[7]

The trial court's refusal to include the specific language requested by the Matyases was not improper. The language requested by the Matyases, which emphasizes constructive or actual knowledge on the part of the declarant, has not been set forth as an essential element of a cause of action for innocent misrepresentation as such cause of action has been described by both this court and our Supreme Court. The trial court's charge did provide that liability could be found only for a statement "in regard to a matter upon which a hearer may reasonably suppose [the declarant] has the means of information . . . ." A court is under no duty at any time to charge in the exact language requested. *Elliot* v. *Sears, Roebuck & Co.*, 30 Conn. App. 664, 668, 621 A.2d 1371 (1993), aff'd, 229 Conn. 500, 642 A.2d 709 (1994). Our review of the jury instuction leads us to conclude that it was sufficiently correct in law, adapted to the issues and ample to guide the jury in its factual determination.

---

[7] In that opinion, our Supreme Court noted that "strict liability for innocent misrepresentation was imposed in a construction contract in *E. & F. Construction Co.* v. *Stamford*, 114 Conn. 250, 158 A. 551 (1932). In *Stamford*, the defendant's erroneous description of subsurface conditions materially affected the plaintiff's excavation costs. This court held the misrepresentation to be actionable, even though there was no allegation of fraud or bad faith, because it was false and misleading . . . . *Stamford* quotes, with approval, from 3 Williston, Contracts § 1512, p. 2689 (1920): If a man makes a statement in regard to a matter upon which his hearer may reasonably suppose he has the means of information . . . and the statement is made as part of a business transaction, or to induce action from which the speaker expects to gain an advantage, he should be held liable for the consequences of reliance upon his misstatement." (Internal quotation marks omitted.) *Johnson* v. *Healy*, supra, 176 Conn. 101.

B

Next, the Matyases claim that the trial court should not have allowed evidence of the plaintiffs' expenses for attorney's fees. We disagree.

At trial, the plaintiffs introduced evidence of attorney's fees that they had incurred in connection with this case. They introduced invoices and a bill in the amount of $2902.36. The trial court allowed admission of this evidence under a default provision of the real estate contract between the parties. This provision provides, in part, that "[if] the Seller is in default by reason of failure . . . to comply with any terms of this contract, the Purchaser may pursue any remedy available to him in law or in equity and further recover damages due him as a result of the Seller's default . . . . The parties further agree that the party who is in default shall pay all costs and expenses incurred by the other party as a result of such other party's enforcement of this contract, including a reasonable attorney's fee." The Matyases argue that the evidence of attorney's fees should not have been admitted because of the general rule that parties in civil actions pursuing their rights are responsible for their own attorney's fees. The Matyases cite *Doe* v. *Heintz*, 204 Conn. 17, 23, 526 A.2d 1318 (1987), as support for their position.

While it is true that " 'a prevailing litigant ordinarily is not entitled to collect a reasonable attorney's fee from the opposing party as part of his or her damages or costs' "; *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 14, 513 A.2d 1218 (1986), quoting *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U.S. 240, 247, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); there are certain exceptions to this rule. In the main, exceptions are based on statutory or contract provisions authorizing the recovery of attorney's fees by a

prevailing litigant. *O'Leary* v. *Industrial Park Corp.*, 211 Conn. 648, 651, 560 A.2d 968 (1989). " 'A contract may provide for the payment of attorney's fees by a defaulting party, but those fees are recoverable solely as a contract right and not as damages . . . .' " *Litton Industries Credit Corp.* v. *Catanuto*, 175 Conn. 69, 76, 394 A.2d 191 (1978).

In this case, there is a contract provision that provides for the payment of reasonable attorney's fees by the defaulting party. Therefore, the plaintiffs' right to recover attorney's fees derives from the contract. The trial court relied on this provision when it allowed the evidence of the attorney's fees and the plaintiffs' recovery of those fees. " '[A] contract clause providing for reimbursement of "incurred" fees permits recovery [of such fees] upon the presentation of an attorney's bill, so long as that bill is not unreasonable upon its face and has not been shown to be unreasonable by countervailing evidence or by the exercise of the trier's own expert judgment.' " *Vespoli* v. *Pagliarulo*, 212 Conn. 1, 5–6, 560 A.2d 980 (1989), quoting *Storm Associates, Inc.* v. *Baumgold*, 186 Conn. 237, 246, 440 A.2d 306 (1982). The plaintiffs in this case presented their attorney's bill. The trial court properly allowed the award of the plaintiffs' attorney's fees in this case.

C

Next, the Matyases claim that the trial court improperly failed to instruct the jury, pursuant to their request to charge, that the alleged misrepresentation did not survive the closing of title. We disagree.

The Matyases argue that they should not be held liable for their misrepresentation regarding the location of the septic system because of language in the contract providing that the representation was not to survive the closing. Essentially, the Matyases are claiming that the terms of the sales contract were merged into

and superseded by the deed, and, thus, there can be no action on a breach of contract. In making this claim, the Matyases overlook the fact that in this action the plaintiffs are not seeking to add to, subtract from or alter the terms of the written contract itself. They are claiming that they were induced to enter into the contract by misrepresentations of material facts. This action is concerned with material misrepresentations in the inducement of the contract. See *Richard* v. *A. Waldman & Sons, Inc.*, supra, 155 Conn. 348.

In *Knight* v. *Breckheimer*, 3 Conn. App. 487, 489 A.2d 1066 (1985), the case cited by the Matyases to support their claim, the plaintiffs instituted an action against the defendants alleging fraudulent misrepresentation, failure to disclose and breach of warranty arising out of the sale of a residence. This court affirmed the trial court's finding that the plaintiffs had failed to show any material misrepresentations on the part of the defendants. This court then held that the trial court was justified in finding that representations made in the contract merged in the delivery of the deed for purposes of the plaintiffs' breach of warranty claim. Id., 490. Here, the plaintiffs' claim has been construed validly to state a cause of action based on innocent misrepresentation in the inducement of the contract. The holding in *Knight* v. *Breckheimer,* supra, 490, is not controlling. We conclude that the trial court properly refused to charge the jury on the doctrine of merger.

### D

Finally, the Matyases claim that the trial court improperly failed to instruct the jury on the doctrine of caveat emptor. We disagree.

The Matyases argue that Ellicott testified at trial that she did not examine the property prior to purchasing it. On the basis of this testimony, the Matyases submitted a request to charge that states that the doctrine

of caveat emptor still applies to the sale of real estate in Connecticut. They argue that the trial court should have given this requested charge.

In the not too distant past, caveat emptor dominated the law of real estate. In this state, however, caveat emptor has not been allowed to stand in the way of imposition of liability for negligent misrepresentation. *Johnson* v. *Healy,* supra, 176 Conn. 102. "To shield a seller with a buyer's negligence in not finding out whether the representation was true or false would be to give a seller the fruit of his falsehood." *Kavarco* v. *T.J.E., Inc.,* 2 Conn. App. 294, 301, 478 A.2d 257 (1984).

The trial court properly refused to charge the jury on the doctrine of caveat emptor.

The judgments are affirmed.

In this opinion the other judges concurred.