[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I
This is a dispute arising from the purchase and sale of real property. The plaintiffs' Complaint is in two counts, the first alleging that the defendant, Isabelle E. Fazzone, failed to complete a road extension as specified in a written guarantee signed by her on April 26, 1993; the second count alleges breach of contract and misrepresentation in that the defendant, through her agent represented that all zoning and other approvals required for issuance of a building permit for each of two lots were in place, and that at the time of closing there would exist no violation of any zoning, planning, subdivision or building rules, regulations or limitations concerning the subject property. The named defendant answered, denying any liability, and a hearing was held on February 20, 1998, at which the said parties appeared and were represented by counsel.
On February 3, 1993 the plaintiff, Jeffrey Siegel ("Siegel"), President and owner of Exceptional Subs, Inc. (now known as Exceptional Properties, Inc.) entered into an agreement with the defendant, Isabelle Fazzone ("Fazzone"), by which plaintiff agreed to purchase, and defendant sell, two lots in the Town of Hamden ("the Town") designated as 1357 and 1359 Paradise Avenue, also designated, respectively, as "Lot 3" and "Lot 2". The agreement was in the form of two contracts, signed by the parties, one for the purchase and sale of Lot 2 and the second for the purchase and sale of Lot 3. Apart from lot designation and price, the terms and conditions of each agreement were identical.
Both agreements contained a paragraph 6, which read, in pertinent part:
 6. The BUYER'S obligations hereunder are contingent CT Page 8439 upon the following:
 ". . . (b) Verification, by BUYER, within 30 days from the date of this contract, that
 (i) That Paradise Avenue will be extended by the Town of Hamden, at no cost to BUYER ["or SELLER" — added and initialed by the parties], from the end of the present pavement to a point in front of Lot 3 . . . in order that both Lot 2 . . . and Lot 3 . . . may be served by the same, and which such extension will be an accepted Town road with all the benefits incidental thereto.
 . . . (iii) Verification by BUYER, within 30 days from the date of this contract, that BUYER will be able to obtain a building permit for the construction of a single family dwelling on the lot which is the subject of this agreement without the need of obtaining any additional zoning or planning approvals or the posting of any bonds with any Town of Hamden agencies or departments."
Both agreements also contained a paragraph 13, which reads:
 "The SELLER represents that, at the time of the closing of title, there shall exist no violations of any Town of Hamden zoning, planning, subdivision or building rules, regulations or limitations and no violations of any restrictive covenant, agreement or condition to which the title as conveyed by the deed to be given in accord with the terms hereof, shall be made subject."
A closing on said properties was scheduled for April 26, 1993. At that time Isabelle Fazzone signed a document which reads as follows:
"I Isabelle E. Fazzone do hereby guaranty that I shall be responsible for the completion of the Road as specified by Town approvals, including laying of crushed stone on the Road known as Paradise Avenue within a reasonable period of time, and shall indemnify and hold Jeffrey Siegel and Exceptional Subs, Inc. CT Page 8440 harmless from any damages as a result of the failure to do so." (Plaintiff's Exhibit "C")
 II
The closing took place as scheduled, on April 26, 1993. Plaintiff claims that in completing the purchase of the said properties he relied on the said guarantee and that defendant Fazzone failed to perform according to this guarantee, as a result of which plaintiff was forced to expend monies to complete the road extension, which was required by the Town as a condition for issuance of building permits.
Plaintiff alleges further that contrary to defendant's representation, through her agent, there were at the time of closing, violations of Town zoning, planning, subdivision or building rules, regulations, or limitations concerning said lots, in that there was no existing approval from the Town's inland wetlands agency, as required to permit construction on the said lots; no zoning permits, because approval by the inland wetlands agency is a condition precedent for the zoning permits; no building permits, because conditions precedent to issuance of building permits are inland wetlands authorization and a zoning permit, as a result of which plaintiff incurred fees and expenses to obtain the needed inland wetland agency approvals and was forced to incur additional attorney's fees to obtain an extension of the time limitation originally imposed for completion of construction in the subdivision where said lots are located, and expend time and monies to obtain said approvals and permits, all by virtue of defendant's breach of contract and false representation.
 III
Certain additional facts are helpful in understanding the circumstances in which this dispute arose. The court finds as follows: Defendant employed Rance Realty as selling broker with regard to the properties in question. Anthony Ranciato, a principal of Rance Realty, acted as selling broker on behalf of Rance Realty in this transaction. The listing agent for the properties was William McLean, a real estate agent associated with Ranciato. McLean had previously owned the subject properties and had sold them to the defendant Fazzone. Ranciato, a friend of Siegel's, brought the subject properties to Siegel's attention, and at some point prior to the contract signing of February 3, CT Page 8441 1993, assured Siegel that all approvals needed for issuance of building permits for the properties were in place, that "the lots were ready to be built on", except that road extension and sewer requirements had to be satisfied. Prior to selling the properties to defendant Fazzone, McLean had obtained subdivision and inland wetlands approval to build on the subject lots. Such approvals as had been obtained by McLean had expired prior to April 26, 1993. McLean was aware of this fact. Siegel retained an attorney to represent him in the transaction at issue, and the agreements signed on February 3, 1993 were drafted by that attorney's office.
The "guaranty", plaintiffs' Exhibit "C", signed by Fazzone on April 26, 1993, was drafted by an attorney representing plaintiffs at the closing in question.
 IV
The plaintiff, in his first count, alleges that the defendant failed to complete a road extension as specified in a written guarantee by defendant at the time of closing on April 26, 1993.
In arriving at the intent of the parties to a contract as expressed or implied in the language used by them, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, Foley v. HuntingtonCo., 42 Conn. app. 712, 730.
Clearly, the issue of a needed road extension was a matter of concern throughout the course of negotiations between the parties. This concern is reflected in paragraph 6(b)(i) of the purchase and sales contract signed by the parties on February 3, 1993.
Paragraph 6(b)(i) is a contingency clause, permitting plaintiff to withdraw from said agreements if the contingency is not met.
The evidence presented at trial makes it clear that by the closing date, April 26, 1993, the parties were aware that the road extension issue had not been resolved. The court finds that defendant, in signing the "guaranty" (plaintiffs' Exhibit "C"), sought to induce the plaintiff to close on the subject properties.
CT Page 8442
When there are multiple writings regarding the same transaction, the writings should be considered together to determine the intent of the parties, Mongillo v. Commissioner,214 Conn. 225, 229.
The "guaranty" constituted a significant modification of the original contract. Whereas paragraph 6(b)(i) of the February 3, 1993 agreements spoke of verification of the extension of Paradise Avenue by the Town at no cost to Buyer or Seller, by the April 26, 1993 guarantee defendant assumed responsibility "for the completion of the road as specified by Town approvals including laying of crushed stone . . . " and defendant further undertook "to indemnify and hold harmless" plaintiffs from any damages as a result of defendant's failure to do so.
Defendant argues that the "Town approvals" referred to in the "guaranty" was the subdivision approval obtained by McLean, defendant's predecessor in title in October of 1989. Since, defendant claims, there was no condition in said zoning approval relating to extension and pavement of Paradise Avenue, the defendant had no responsibility under the "guaranty" to pave the said road. Defendant appears to be asking the court to conclude that in order to induce the plaintiff to close on the subject properties she, the defendant, executed a meaningless guarantee, believing it obligated her to do nothing. The court will not ascribe such base motives to the defendant.
Viewed in context, the court concludes that the defendant, in executing the "guaranty" on April 26, 1993, undertook to extend and prepare the Paradise Avenue roadway in such manner as needed to meet Town requirements for issuing a building permit, and to hold plaintiffs harmless in the event her failure to do so.
The court finds that the plaintiff has established, by a fair preponderance of the evidence, that defendant guaranteed she would do the road work on the extension of Paradise Avenue needed to obtain Town building permits and to hold plaintiff harmless for damages incurred as a result of defendant's failure to do so, that defendant failed to complete such road work, and that plaintiff as a consequence was forced to expend fifteen thousand ($15,000.00) dollars to complete said road work.
 V
Plaintiff in his Second Count alleges "breach of contract and CT Page 8443 false representation." Although the allegations are in the conjunctive, they state two distinct claims.
First, plaintiff claims the defendant breached paragraph 13 of the subject contracts in that at the time of closing, inland wetlands permits, zoning approvals and building permits were not in place, this constituting violations of Town "rules, regulations or limitations." Defendant argues persuasively that the absence of such permits and approvals cannot be construed as "violations of Town rules, regulations or limitations." To construe paragraph 13 as does the plaintiff is to introduce ambiguity where the contract language appears to be straightforward and unambiguous. This paragraph was drafted by the plaintiff's attorney. A document containing ambiguous language must be construed against its drafter, Cody v. RemingtonElectric Shaver, 179 Conn. 494, 497. "Violation" is defined as: Injury, infringement, breach of right, duty or law, Black's LawDictionary, 6th ed., p. 1570 . To construe absence of permits or approvals as "violations" of rules, regulations or limitations is not warranted legally or logically. The court finds that the plaintiff has failed to establish, by a fair preponderance of the evidence, that the defendant breached the terms of paragraph 13 of the subject contract.
It is otherwise with the plaintiff's second claim in the Second Count.
Plaintiff alleges false representation by the defendant that the above-mentioned permits and approvals were in place, which representation induced plaintiff to enter into the contracts to purchase said lot.
The contingency clauses 6(b)(i), (ii) and (iii) of the contracts signed on February 3, 1993 themselves are unambiguous. They impose no obligations on the defendant but were in the nature of "escape clauses", enabling plaintiffs to void the contracts without penalty should the assurances given Siegel by defendant's agent prove to be untrue.
With regard to zoning and subdivision approvals and the availability of building permits, Siegel contented himself with asking the same agent of defendant if said approvals were indeed in place. Having given himself the opportunity independently to verify defendant's assertions, the plaintiff failed to do so. CT Page 8444
"The elements of this cause of action [innocent misrepresentation] are: `(1) a representation of material fact, (2) made for the purpose of inducing the purchase, (3) the representation is untrue, and (4) there is justifiable reliance by the plaintiff on the representation by the defendant and (5) damage's", Matyas v. Minck, 37 Conn. App. 321, 333.
Here, the evidence was uncontroverted that Anthony Ranciato, defendant's agent, knowing that the plaintiff was interested in approved building lots, approached plaintiff regarding the subject lots and assured plaintiff the needed permits and approvals were in place, that the lots were "ready to build" except for sewage and road extension requirements, that this representation was not true; that this representation was material, in that it was significant in inducing plaintiff to enter into the subject contract; that plaintiff relied justifiably on such assurance from the broker, and that plaintiff suffered damages, in that he was obliged to expend time and monies to obtain the needed permits and approvals.
It matters not that plaintiff failed independently to investigate whether the said permits or approvals were in place. ". . . The fault of the victim in failing to discover the truth does not preclude relief unless it is so extreme as to amount to a failure to act in good faith and in accordance with reasonable standards of fair dealing, 1 Restatement Second, Contracts, Section 172",Pacelli Bus Transportation, Inc. v. Pacelli, 189 Conn. 401,409 (1983)
Plaintiff relied on the assurances of defendant's agent, who plaintiff considered a friend and who as a real estate broker would reasonably be deemed knowledgeable regarding permit and approval status of the subject property.
Plaintiff's failure independently to investigate, however lacking in prudence, did not amount to a failure to act in good faith and in accordance with reasonable standards of fair dealing.
The court finds that plaintiff has established, by a fair preponderance of the evidence, that he was induced to enter into the subject agreements by the misrepresentations of the defendant that necessary permits were in place, and that plaintiff thereby suffered damages in the amount of eight thousand, seven hundred twenty five ($8,725.00) dollars. CT Page 8445
 VI
The court finds that plaintiff has established, by a fair preponderance of the evidence, that defendant is liable to the plaintiff in the amount of fifteen thousand ($15,000.00) dollars on the First Count and liable in the amount of eight thousand, seven hundred twenty five ($8,725.00) dollars on the Second Count, for a total liability of twenty three thousand, seven hundred twenty five ($23,725.00) dollars.
In addition, the court finds that plaintiff filed its Offer of Judgment in the amount of fifteen thousand ($15,000.00) dollars on September 19, 1995. Accordingly, pursuant to General Statutes Section 52-192a, the court awards interest at the statutory rate, from the date of filing of complaint in this matter, August 4, 1995.
Accordingly, judgment may enter for the plaintiffs, in the amount of twenty three thousand, seven hundred twenty five ($23,725.00) dollars with interest.
By the Court
Downey, J.