[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PRESENTMENT FOR MISCONDUCT
The petitioner, the Statewide Grievance Committee (the Committee), brought 1 presentment against the respondent, Otto P. Witt, pursuant to Practice Book § 2-47, charging him with misconduct outside of the presence of the court involving his character, integrity, professional standing and conduct. An evidentiary hearing was held on January 9, 2002, and January 10, 2002, during which the respondent was represented by counsel. Oral argument heard on March 18, 2002. The petitioner charges that the respondent violated Rules of Professional Conduct 1.1 (competence),[1] 1.3 (diligence)[2] and 1.4 (communication).[3] The respondent filed a request to revise seeking to delete paragraphs 2 through 8 of the presentment petition concerning prior disciplinary action imposed as to the respondent, on the grounds that they were made in an attempt to "prejudice the trier of facts and to draw improper inferences." In response to that request, the petitioner moved to bifurcate the proceeding, which motion the court granted. While the paragraphs in question remain in the presentment petition, they have not been considered by the court in reaching the decision articulated herein CT Page 8721 as to whether the Committee has met its burden of proving by clear and convincing evidence that the conduct in question violates Rules of Professional Conduct 1.1, 1.3 and 1.4(a).[4] Following the court's ruling on the issue of the allegations of prior discipline, the respondent filed an answer and the evidentiary hearing commenced.[5]
 I
Based on the testimony and full exhibits, the court finds the following facts: In 1990, Stephen Battista of Plainville hired Nicholas E. DeNigris, Esq., of New Britain to represent him in a divorce proceeding and thereafter to defend him in connection with a charge involving spousal sexual assault, a charge for which he was convicted. In 1992, Battista hired the respondent to represent him on the appeal of his conviction and, when that failed, to represent him in a legal malpractice claim against DeNigris. Witt had represented Battista in connection with an employment-related claim several years earlier. Witt brought the lawsuit, which bore a return day of June 15, 1993, on behalf of Battista against DeNigris. (Petitioner's Exhibit 4.) After a pretrial held on December 19, 1995, the case was scheduled for trial on October 24, 1996. (Petitioner's Exhibit 1; Respondent's Exhibit C.) On October 10, 1996, counsel for DeNigris received an expert disclosure from Witt bearing the date of October 3, 1996. (Petitioner's Exhibit 1.) On October 11, 1996, DeNigris filed a motion to preclude the expert. (Id.) A hearing on the motion to preclude was held on October 15, 1996, at which time it was granted by the court, Koletsky, J. Judge Koletsky's stated reason was undue prejudice and the likelihood that the late disclosure would interfere with the orderly progress of the trial scheduled nine days hence. Battista was not present at the time of the hearing on the motion to preclude.
On October 24, 1996, the day scheduled for jury selection, the lawyers arranged a hearing before the court Lavine, J., for the purpose of entering a stipulation consenting to judgment on count two of the complaint concerning legal malpractice. Count one, a CUTPA claim, was withdrawn by Battista. The stated reason for the stipulation as to count two was that a judgment was necessary from which to take an appeal from Judge Koletsky's ruling on the motion to preclude. (Respondent's Exhibit C.) There is nothing in the record of the proceeding before Judge Lavine that suggests that Battista was present in court. The stipulation is referred to by the court as "by agreement of counsel." (Id., 6.) Judge Koletsky's decision was ultimately affirmed, per curiam, on appeal.Battista v. DiNigris, 47 Conn. App. 908, 701 A.2d 348 (1997).
Nicholas DiNigris, Esq., Stephen Battista, Bruce Stanger, Esq., and the respondent testified at the presentment hearing. DiNigris testified that CT Page 8722 he was the defendant in the lawsuit known as Battista v. DeNigris. He recalls filing a motion to preclude the plaintiff's proposed expert witness on October 10, 1996, shortly after the expert was disclosed by Witt. (Petitioner's Exhibit 1.) DeNigris further recalls the court granting the motion at the time of oral argument on October 15, 1996, as reflected in the transcript of that date. (Petitioner's Exhibit 2.) At the hearing, Judge Koletsky made a finding that there was no bad faith in connection with Witt's late disclosure.
Battista testified that, during the course of his lawsuit against DeNigris, he and Witt would talk every couple of months. (Transcript, January 9, 2002, p. 17.) Battista remembers getting a letter telling him that they were going to pick a jury. He also remembers going to court and "leaving with no answers." (Id.) He does not believe he ever appeared before a judge in connection with the malpractice case. He left court on the day of jury selection thinking everything was on hold. Battista claims that Witt did not tell him that they were precluded from presenting expert testimony. He only recalls that in "probably `98," he called Witt and Witt told him that "[t]he fix is in. Your case is dead." (Id.) Battista does not know anything about the dismissal or if Witt ever appealed it. Battista subsequently contacted Attorney Bruce Stanger in an effort to find out what happened with his case. Stanger told him "how to get the decision," which he did, and that is when he found out that the case had been dismissed. He had no memory of seeing the appeal brief before January 9, 2002. (Plaintiff's Exhibit 4.)
Stanger testified that Battista first contacted him in February 1998 for legal advice concerning the status of his legal malpractice lawsuit against Attorney DiNigris. Battista related to him Witt's comment that "the fix" was in. Stanger sent Battista to review the file and to bring him copies of the relevant papers. Stanger then advised Battista that the case had been lost because there was no properly disclosed expert. He did not recall ever seeing papers indicating that the case had been appealed. Stanger subsequently filed a grievance against Witt.
Witt was called as a witness in his own defense as well as by the petitioner. He testified that Michael Mullin, Esq., filed an appearance and attended the pretrial at Witt's request in Battista v. DeNigris. Witt relied on Mullin to obtain the expert and file the disclosure with the court. As of January 10, 2002, the day of his testimony, Witt stated that he does not know whether Mullin retained an expert or not. Witt further testified that Battista was in the courthouse on the day of jury selection and that he believes that Battista was present in court when he stipulated to judgment and he informed him of the need to file an appeal, which Witt then proceeded to do with the assistance of Attorney Linda Millares. There is no question that Battista was not present at the CT Page 8723 hearing on the motion to preclude before Judge Koletsky. After the motion to preclude was granted, Witt sat down with Battista in his office prior to October 24, 1996, and discussed the options. The option Battista chose was to withdraw the CUTPA claim and take an immediate appeal to address the expert disclosure. Witt also claimed that Battista was in court with him when the lawyers for the parties stipulated to judgment, which Witt said explains why Judge Lavine did not inquire about his client. Upon further questioning by this court, Witt stated that it was his recollection that Battista was at counsel table with him at the time they entered into the stipulation. Witt further testified that he spoke to Battista again after the stipulated judgment. He assumed Battista knew he was filing an appeal. Witt claimed that Battista must have known of the appeal because it was the practice of his office to send copies of appeal briefs to clients. It was when the appeal was lost that Witt called Battista and informed him that the case was dead.
 II
A presentment proceeding "is neither a civil action nor a criminal proceeding, but is a proceeding sui generis, the object of which is not the punishment of the offender, but the protection of the court." (Internal quotation marks omitted.) Statewide Grievance Committee v.Rozbicki, 219 Conn. 473, 483, 595 A.2d 819 (1991), cert. denied,502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992). "In presentment proceedings, the statewide grievance committee must prove by clear and convincing evidence that the attorney engaged in misconduct in violation of the Rules of Professional Conduct. . . . The trial court conducts the presentment proceeding de novo. . . . In determining whether an attorney violated the Rules of Professional Conduct and the appropriate sanction to impose, the trial court possesses a great deal of discretion." (Citations omitted.) Statewide Grievance Committee v. Egbarin,61 Conn. App. 445, 453, 767 A.2d 732 (2001).
"[C]lear and convincing proof denotes a degree of belief that lies between the belief that is required to find the truth or existence of the [fact in issue] in an ordinary civil action and the belief that is required to find guilt in a criminal prosecution. . . . [The burden] is sustained if evidence induces in the mind of the trier a reasonable belief that the facts asserted are highly probably true, that the probability that they are true or exist is substantially greater that the probability that they are false or do not exist." (Internal quotation marks omitted.) Somers v. Statewide Grievance Committee, 245 Conn. 277,290-91, 715 A.2d 712 (1998). "Although we have characterized this standard of proof as middle tier standard . . . and as an intermediate standard . . . between the ordinary civil standard of a preponderance of the evidence, or more probably than not, and the criminal standard of CT Page 8724 proof beyond a reasonable doubt, this characterization does not mean that the clear and convincing standard is necessarily to be understood as lying equidistant between the two. Its emphasis on the high probability
and the substantial greatness of the probability of the truth of the facts asserted indicates that it is a very demanding standard. . . . We have stated that the clear and convincing evidence standard should operate as a weighty caution upon the minds of all judges, and it forbids relief whenever the evidence is loose, equivocal or contradictory." (Citations omitted; emphasis in original; internal quotation marks omitted.) Miller v. Commissioner of Correction, 242 Conn. 745, 794-95,700 A.2d 1108 (1997).
 III A Rules 1.1 and 1.3
Based on the foregoing standard, the court is satisfied that there is clear and convincing evidence that the respondent violated Rules of Professional Conduct 1.1 and 1.3. There is no dispute that the proof of a professional malpractice case requires the testimony of an expert witness. While the granting of a motion to preclude an expert may not always result in a violation of these rules, in a situation where expert testimony is an essential requirement to establish the claim, the failure to retain timely and to disclose adequately the expert may well constitute a violation of Rules 1.1 and/or 1.3. The plaintiff cannot prevail in a professional negligence case unless there is "positive evidence of an expert nature from which the jury could reasonably and logically conclude that the defendant was negligent. The testimony of an expert may be dispensed with only where there is such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence." Levett v. Etkind, 158 Conn. 567, 574, 265 A.2d 70 (1969). "In cases involving claims of professional negligence . . . expert testimony is essential to establish both the standard of skill and care applicable and that the defendant failed to conform to the standard, as these matters are outside the knowledge of the jury." Matyas v. Minck,37 Conn. App. 321, 326-27, 655 A.2d 1155 (1995). Witt's failure timely to secure and disclose an expert witness essential to a successful claim of professional negligence reflected a lack of "legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Rules of Professional Conduct 1.1.
The respondent has forcefully argued that the reasons why the expert was not timely disclosed are essential to the court's consideration as to whether a failure to disclose constitutes a violation of the Rules of CT Page 8725 Professional Conduct. Even assuming that this is the case, the court finds that the reason offered in this case is insufficient. The respondent claims that his expert disclosure on behalf of Battista was untimely because he sent another lawyer[6] with whom he had a space sharing relationship to the pretrial at which time the trial date was set. Witt further claims that the lawyer filed an appearance and was thereafter charged with the responsibility of finding, retaining and presumably disclosing an expert witness. (Transcript, January 10, 2002, pp. 53-54.) However, a review of that file (CV93-0525774S), of which the court takes judicial notice, reflects that no other lawyer had an appearance in the file.[7] In addition, there is no other evidence that Battista had a relationship with any lawyer other than Witt in connection with this claim.[8] A review of a pretrial memorandum filed by DiNigris, acting pro se, dated December 13, 1995 (#114), prepared in connection with count two (legal malpractice) of Battista's complaint and incorporated in the court file, discloses the following: "[T]he plaintiff has failed to disclosed (sic) any expert testimony or expert. The plaintiff (Battista) has not disclosed any experts, either on the former rules or the rules as they have been recently amended requiring reasonable notice of the plaintiff's experts. The plaintiff cannot prevail in the above entitled case without expert testimony." The next numbered document in the file (#115) is Witt's contested expert disclosure dated October 3, 1996, and file-stamped by the court on October 10, 1996. The fact is that Witt is the only lawyer who had an appearance in Battista's lawsuit against DiNigris. As the only lawyer authorized to appear on Battista's behalf, it was Witt's obligation to represent Battista, diligently and competently, in accordance with the Rules of Professional Conduct. He cannot escape the requirements of Rule 1.1 by improperly delegating the responsibility he owed to Battista to a nonappearing lawyer. Witt also failed to keep himself apprised of Mullin's progress until it was too late and Battista lost his right to have a trial on his claim of legal malpractice as a result. Witt's acknowledgment of the difficulty in securing an expert in a professional malpractice further demonstrates his lack of diligence in not securing an expert in a timely manner.
Accordingly, the court finds that the petitioner has established by clear and convincing evidence that Witt acted neither diligently or competently in connection with his failure to obtain and disclose timely an expert. The fact that he delegated his responsibility to a nonappearing lawyer with whom his client had no relationship does not mitigate the fact of these departures from the standards of professional conduct set forth in Rules 1.1 and 1.3. CT Page 8726
 B Rule 1.14
Witt's testimony concerning his communications with Battista concerning the motion to preclude, the stipulated judgment and the appeal is not a model of clarity and not totally credible. On the other hand, Battista's recollection of this time period is vague and ambiguous, at best. From all angles the evidence of a violation of Rule 1.4 by Witt is unconvincing and unclear. The petitioner has therefore failed to sustain its burden of proof as to this particular claim.
 CONCLUSION
For all the foregoing reasons the court finds that the petitioner has established that Witt has violated Rules 1.1 and 1.3 by clear and convincing evidence. However, petitioner has failed to establish a violation of Rule 1.4 by the same standard.
An evidentiary hearing will be held on the matter of disposition on July 23, 2002, at 10:00 a.m. Counsel are hereby ordered to address the "American Bar Association Standards for Imposing Lawyer Sanctions" at that time.
Peck, J.