D'Esopo and Company, Inc. *v.* Douglas
W. Bleiler, et al.
(3944)

Borden, Bieluch and Foti, Js.

Argued January 19—decision released March 8, 1988

*John S. Pinney,* with whom, on the brief, was *Thomas
E. Gaffey,* for the appellant (plaintiff).

*Edward J. Daly, Jr.,* for the appellees (defendants).

Borden, J. The plaintiff appeals, after a trial to the
court, from a judgment in the amount of $6300 ren-
dered in favor of the defendants on their counterclaim
alleging that the plaintiff negligently discharged its
responsibility to install adequate subflooring in their
home. The plaintiff challenges (1) the trial court's con-
clusion that a builder who has properly followed plans
and specifications supplied by the homeowner or his

agent may be held liable for loss or damage which results solely from defects in those plans and specifications, in the absence of negligence on the builder's part or any express warranty by the builder, (2) the trial court's finding of fact that the subflooring was inadequately secured, and (3) the trial court's assessment of cost of repair damages as of the date of trial, rather than the date of the alleged breach of duty. Because we conclude that the trial court's finding of liability is not supported by the evidence, we find error.[1]

In its memorandum of decision, the trial court found the following facts. The parties entered into a written contract in which the plaintiff, a general contractor, agreed to build a house for the defendants. The defendants' architect supplied the plans and specifications for the house, to which some change orders were made. The original plans and specifications supplied by the architect called for vinyl flooring in certain areas of the house. After the plywood subflooring was installed, the defendants and their architect decided to change the floor covering in those areas from vinyl to ceramic tile. The architect did not alter the plans for the subflooring when the change to ceramic tile was made. After the job was completed, cracks developed in the tile floors. The plaintiff's president testified at trial that he now believes that another layer of plywood subflooring would have prevented the cracking of the tiles, although no one suggested this to him before the work was done. The court concluded that it was the plaintiff's responsibility to assure adequate preparation of the floor on which the tile was installed and that the plaintiff had failed to do so.

In an articulation, the court set forth, inter alia, the following additional findings and conclusions: "[I]t was

---

[1] Because the trial court's finding of liability is erroneous, requiring our direction of judgment in the plaintiff's favor, we need not address the plaintiff's claim of error on the issue of damages.

the builder's responsibility to provide subflooring adequate for the installation of tile. The plywood subflooring here was not sufficiently rigid to keep it from moving. The cracks which developed in the tile follow the seam lines in the subflooring. *The inference reasonably to be drawn from this is that the subflooring was inadequately secured, allowing it to lift up at its seams.* While the subflooring specifications were drawn before a change from linoleum to tile was made, the builder never inquired of the architect whether anything more needed to be done. The tile installer . . . did inquire about the subflooring construction of [the plaintiff]. Based on [the plaintiff's] description of the construction, [the tile installer] thought the flooring adequate to support the tile. [The tile installer's] inquiry should have alerted [the plaintiff] *to the concern for stability* as well as strength . . . . The defendants have proved that the plaintiff failed to exercise [that degree of care which a skilled builder of ordinary prudence would have exercised under the same or similar circumstances] and that he should have known that the cracks would be the foreseeable result." (Emphasis added.)

The plaintiff claims that his failure to inquire whether additional subflooring was necessary cannot be a basis of liability when his work followed the plans and specifications provided by the defendants' architect, and that there was no evidence that he failed to construct the subflooring in accordance with those plans. We agree.

"[T]he rule has become well settled in practically every American jurisdiction in which the matter has been involved, that a construction contractor who has followed plans or specifications furnished by the contractee, his architect, or engineer, and which have proved to be defective or insufficient, will not be responsible to the contractee for loss or damage which results, at least after the work is completed, solely from the defective or insufficient plans or specifications, in the

absence of any negligence on the contractor's part, or any express warranty by him as to their being sufficient or free from defects." Annot., 6 A.L.R.3d 1394, 1397. Our Supreme Court followed this common law rule in *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 656, 345 A.2d 550 (1974), noting "that a contractor will not be responsible for loss or damage resulting from defective plans or specifications supplied by the contractee." See also *Tompkins, Inc.* v. *Bridgeport,* 94 Conn. 687, 110 A. 193 (1920); *Hills* v. *Farmington,* 70 Conn. 450, 39 A. 795 (1898).

Therefore, the trial court could not have based its finding of liability upon damage which developed as a result of the plaintiff's compliance with, and its failure to question, the specifications provided by the defendants. Under the circumstances of this case, then, the plaintiff's liability could properly be based only upon an adequately supported finding of negligence of the plaintiff in securing the plywood subflooring.

The court found in effect that the plaintiff was negligent in that "the subflooring was inadequately secured, allowing it to lift up at its seams." The plaintiff, however, challenges this finding of fact as lacking any support in the evidence. In examining whether this finding may properly support the court's legal conclusion, we must "determine whether there is evidence to support the finding. If not, the finding is clearly erroneous." *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 45, 521 A.2d 221 (1987).

All of the evidence adduced at trial indicated that the subflooring was built in accordance with the specifications, and that the cause of the cracking in the tile was that additional plywood subflooring should have been included in the architect's plans, and thus in the subfloor, in order to provide additional strength to support the tile flooring. A review of the transcript makes

clear that the theory of the defendants' case with respect to the counterclaim was that the builder should have known that the subflooring it was hired to install would not support the tile to be installed; the defendants' case was based on evidence showing inadequate strength, not inadequate stability, in the subflooring.

Only Harold Epstein, the defendants' expert witness on the issue of cost of repair damages, provided testimony arguably which supports the court's finding regarding movement in the subflooring. On cross-examination, and over the objection by the defendants,[2] Epstein testified that he observed movement in the subfloor prior to the installation of the tiles and that he informed the defendants that another layer of plywood was needed to provide enough strength to prevent cracking in the tiles to be laid. In his testimony, however, Epstein neither suggested that the subflooring was installed improperly nor opined that an inadequately secured subflooring was the cause of the cracking. Even read in a light most favorable to supporting the trial court's finding, at most this evidence only corroborated prior testimony suggesting that not enough subflooring had been installed; it did not support the court's finding respecting the stability of the work performed.

Without any expert testimony suggesting that the floor was inadequately secured or that an inadequately secured flooring was the cause of the damage to the tiles, the trial court's finding in this regard was clearly erroneous. Under the facts of this case, in the absence of expert testimony explaining how the work performed by the plaintiff failed to comply with "that degree of

---

[2] The defendants' counsel objected to any questions asked of Epstein regarding the condition of the subfloor, noting that Epstein "hasn't been called here as an expert in this case on the cause of what happened to the floor but only to the price."

care which a skilled builder of ordinary prudence would have exercised under the same or similar conditions''; *Calderwood* v. *Bender,* 189 Conn. 580, 584, 457 A.2d 313 (1983); and how that negligence caused the damages complained of, a factfinder could not properly have inferred that fact. Thus, the court's conclusion regarding liability cannot stand.

There is error, the judgment on the defendant's counterclaim is set aside and the case is remanded with direction to render judgment for the plaintiff on the defendants' counterclaim.

In this opinion the other judges concurred.