******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

REGIONAL SCHOOL DISTRICT 8 *v.* M & S
PAVING AND SEALING, INC.
(AC 43549)

Elgo, Cradle and Clark, Js.

*Syllabus*

The plaintiff school district sought to recover damages from the defendant
for breach of contract relating to the defendant's allegedly defective
work in repairing a set of concrete stairs on the plaintiff's campus.
Following the defendant's completion of its contract, the concrete of
the stairs experienced significant cracking, and the plaintiff was required
to hire a separate contractor, R Co., to replace the stairs. The stairs
replaced by R Co. also complied with applicable building code regula-
tions, which the stairs repaired by the defendant had not. The trial court
found that the plaintiff could not prevail on its breach of contract claim
on the basis of the building code violations, as the contract did not call
for compliance with the code, but that the defendant did breach the
contract on the basis of its unworkmanlike performance in the construc-
tion of the stairs. The court rendered judgment for the plaintiff and
awarded damages, and the defendant appealed to this court. *Held*:

1. The trial court did not err in concluding that the defendant breached the
contract by virtue of its unworkmanlike performance: this case fell
within the recognized exception to the general rule requiring expert
testimony in cases alleging a breach of the implied duty to perform in
a workmanlike manner, as the court did not require expert testimony to
conclude that the cracks in the concrete were caused by the defendant's
defective work, there was evidence presented showing that there were
plain and obvious defects in the concrete, the defendant was the only
party responsible for replacing the stairs, including the choice and instal-
lation of the concrete, cracks began to appear less than six months after
the work was completed, the cracks were significant in degree, and the
defendant presented no evidence that the cracks were caused by some
significant impact; moreover, the defendant's claim that the cracking
could have been caused by a snowplow or other significant impact was
speculative, unsupported by admissible evidence, and inconsistent with
the evidence of cracking that continued to occur throughout the winter
and after the defendant had performed repair work.

2. The defendant could not prevail on its claim that the trial court improperly
calculated damages because the plaintiff failed to prove that the defen-
dant's breach of contract required the stairs to be replaced instead of
repaired; the trial court's conclusion that the cracking in the concrete
required the stairs to be replaced was not clearly erroneous, as the
court's finding that both the cracking concrete and the code violations
independently required the stairs to be replaced was supported by evi-
dence in the record, which showed that there was substantial cracking
in the concrete, which was not resolved by the defendant's subsequent
repair work, and the defendant conceded that it was liable for any
damages stemming specifically from defects in the concrete.

Argued April 15—officially released August 3, 2021

*Procedural History*

Action to recover damages for breach of contract,
and for other relief, brought to the Superior Court in
the judicial district of Tolland, where the matter was
tried to the court, *Hon. Samuel J. Sferrazza*, judge
trial referee; judgment for the plaintiff, from which the
defendant appealed to this court. *Affirmed.*

*Keith Yagaloff*, for the appellant (defendant).

*Robert J. O'Brien*, for the appellee (plaintiff).

*Opinion*

CLARK, J. The defendant, M & S Paving and Sealing, Inc., appeals from the judgment of the trial court rendered in favor of the plaintiff, Regional School District 8, following a trial to the court on the plaintiff's breach of contract claim for defective work. On appeal, the defendant claims that the trial court (1) erred when it found, in the absence of expert testimony, that the defendant's work proximately caused the alleged defects, and (2) improperly calculated the amount of damages awarded to the plaintiff. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. In July, 2014, the plaintiff, a regional school district consisting of RHAM High School and RHAM Middle School in Hebron, issued a request for proposals to repair various areas on its campus. The defendant submitted a proposal to replace, among other things, an outdoor stairway connecting a lower parking lot to the main entrance of the middle school. The plaintiff selected the defendant's proposal to replace the stairway and the parties agreed on a price of $9000 for the work. The bid form provided that the "[s]tair railings shall be salvaged, where possible, and securely reattached with a sleeve."

The defendant completed the work prior to the commencement of the school year in September, 2014. The plaintiff paid the defendant for the work in October, 2014. On January 22, 2015, Robert J. Siminski, the then superintendent of schools, observed what he described as "substantial cracking" in the concrete stairs. The plaintiff's then interim director of facilities, Michael Schlehofer, took photographs of the cracks and forwarded them to the defendant. Schlehofer later testified that the cracking was so substantial that the stairs had to be closed for safety purposes. On January 31, 2015, without a request from the plaintiff, the defendant sent a welder to the school to perform work on a section of the stairs where the railing attached to the concrete. When the defendant later sent the plaintiff an invoice for the welding, the plaintiff responded that it had not authorized that work.[1] The defendant did not attend to the damaged concrete itself until after the plaintiff provided notice on May 4, 2015, that it would not contract with the defendant for further work to be performed on the campus until the problem with the stairs was resolved. On or about May 8, 2015, without notifying the plaintiff, the defendant sent its employees to repair the stairs. The plaintiff, however, was not satisfied with the repairs. Schlehofer testified that subsequent to January, 2015, additional cracks continued to appear in the stairs, even after the defendant attempted to repair the stairs in May, 2015.

During the summer of 2015, a photograph of the prem-

ises appeared in a newspaper article, prompting Joseph Summers, a building official and zoning enforcement officer for the town of Hebron, to inspect the stairs. Summers sent a memo to Siminski on August 10, 2015, notifying him that certain sections of the stairway did not comply with the State Building Code (code). In his letter, Summers informed Siminski that the height of the stair risers and the size of the stair treads were not uniform and exceeded the respective variances permitted by the code. Summers also observed that the height of the handrail was not uniform and varied by several inches along the stair, also in violation of the code.

On September 2, 2015, counsel for the plaintiff wrote to Steven Fradianni, part owner of the defendant, informing him that the stairs had not been repaired satisfactorily. The plaintiff contacted Rockfall Company, LLC (Rockfall), the designated on call contractor for Hebron, through the Capital Region Organization of Governments, a regional state cooperative, for an estimate of the cost of repair. The plaintiff, meanwhile, continued to reach out to the defendant. The parties scheduled a meeting for December 4, 2015, between Schlehofer, Siminski, and the defendant's vice president, Joseph Fradianni, Jr., which Fradianni failed to attend. Thereafter, the plaintiff hired Rockfall to repair the stairs. Rockfall replaced the stairs in the summer of 2016 and also performed additional work on the surrounding sidewalk area, for a total cost of $34,789.02. The work performed by Rockfall complied with the code.

The plaintiff commenced an action for breach of contract against the defendant in March, 2017. In its complaint, the plaintiff alleged that it had solicited and accepted a bid from the defendant to perform concrete replacement and repair work on the stairs. The defendant, however, allegedly performed the work in a defective and unworkmanlike manner that necessitated later correction and replacement. Specifically, the plaintiff alleged that the work did not comply with applicable code requirements regarding risers, treads, and handrails and that the concrete the defendant used cracked and deteriorated excessively. The plaintiff also alleged that the defendant had failed to correct the cracks in the stairs although the plaintiff repeatedly asked it to do so. The defendant denied the material allegations concerning breach of contract.[2]

The court conducted a courtside trial on September 12, 13 and 17, 2019. The plaintiff called Schlehofer, Summers, and Henry Racki, Jr., a management representative of Rockfall, to testify. At trial, the plaintiff introduced into evidence photographs taken by Schlehofer of the cracks in the concrete, as well as written communications between the parties and the relevant bid documents and purchase orders. Racki testified that when he inspected the premises in the summer of 2016

before Rockfall began its work, he observed "a lot of shaling and cracking in the concrete."[3] Summers, who had been disclosed as an expert witness on the subject of the code, testified concerning the code violations that he observed. The plaintiff did not offer any expert testimony as to why the concrete cracked.

The defendant disclosed Joseph Fradianni, Jr., as an expert witness on the nature of the work the defendant performed, but he did not testify. Instead, Steven Fradianni, the defendant's co-owner, testified that the defendant performed all of the work itself, using concrete that it had purchased from a supplier.[4] He also testified about how one might design the stairway to conform the dimensions to the sloping sidewalk. Steven Fradianni speculated that the railing had been dented by some form of impact, which the defendant argued may have been a snowplow. The plaintiff objected, and Fradianni admitted that he had not personally observed the site and that his testimony was based entirely on information obtained from others.

Following the close of evidence, the court issued an eleven page memorandum of decision, addressing the alleged code violations and other defects in the stairs. The court made the following factual findings. The defendant agreed to replace a set of concrete stairs for $9000 and completed the work prior to the start of the school year in September, 2014, for which it was paid on October 2, 2014. On the morning of January 22, 2015, Siminski observed "substantial cracking in the concrete of the second step up from the lower sidewalk." After photographing the cracking, Schlehofer contacted the defendant. The defendant, for "reasons that the admissible evidence failed to disclose," sent a welder to repair part of the metal railing. The defendant informed the plaintiff that it would wait until the weather was sufficiently warm for concrete repairs. Schlehofer erected barriers to prevent use of the stairs in the meantime. Photographs Schlehofer forwarded to the defendant in April, 2015, showed "long, deep, and obvious fissuring of a portion of the tread and riser forming the second step from the bottom of the stairs." The defendant performed concrete repairs in May, 2015, but "the plaintiff was very dissatisfied with the result, which it found unsightly, and new lines of fracturing were appearing elsewhere on the stairs." A subsequent inspection of the stairs by Summers revealed that the stairs did not comply with the code and that the stairs had to be replaced. The plaintiff contracted with Rockfall to replace the stairs at a price of $30,235.20, and to replace the upper sidewalk for $4553.82.

The court also found that the defendant substantially complied "with the terms of the contract despite the fact that the dimensions of the steps slightly exceeded the [permissible] code standards for tread depth and riser height." The court noted that the parties' agree-

ment called for the defendant to reuse the existing railings, which placed constraints on the configuration of the stairs, and that the contract called only for a replacement and not a redesign. The court also noted that the contract did not require express "compliance with all code standards to the letter," and that there were no issues until Siminski observed cracks in the stairs in January, 2015.

Thus, the court found that the defendant had completed the work in full and that the plaintiff had delivered payment after inspecting the stairs and expressing satisfaction with the work. The court concluded that the defendant proved its fourth special defense; see footnote 2 of this opinion; "which can fairly be read, in part, to embrace the concepts of acquiescence or ratification with respect to these code violations." The court thus determined that the plaintiff did not prevail on its breach of contract claim on the basis of the code violations.

The court next turned to the issue of the cracked stairs. It found that "[s]erious cracking of concrete within six months of formation leads the court to infer unworkmanlike performance unless the fragility of the product can be attributed to some outside force." The court rejected the defendant's argument that a snowplow might have struck the stairway, on the basis of its finding that (a) neither party had offered expert testimony as to why the concrete stairs had developed cracks so soon after installation, and (b) the defendant offered no admissible evidence regarding a possible snowplow impact. As a result, the court found that the stairs cracked due to the defendant's unworkmanlike performance. It also found that the stairs continued to crack following the defendant's repair in May, 2015. The court thus concluded that the defendant breached the contract.

Having found the defendant liable for breach of contract, the court turned to damages. The court found that the defects required the stairs to be removed and replaced,[5] and calculated the amount the plaintiff should recoup for the additional work.[6] The court noted that some of the new work done by Rockfall was outside of the scope of the contract between the plaintiff and the defendant. Specifically, Rockfall reconstructed the upper sidewalk area, which the defendant had not contracted to do, and as a result of doing so, Rockfall had the additional benefit of building the stairs and upper sidewalk anew together. The defendant, by contrast, had to conform the stairs to the existing slope of the sidewalk. Rockfall also had the flexibility of installing new railings and adding an additional step to the stairs. The court found that the plaintiff paid Rockfall $34,789.02 for all of its work. From that sum, the court deducted $4553.82, which the plaintiff paid to reconstruct the upper sidewalk, $1500 paid to a professional

engineer, $3550.39 for the installation of new railings, and the sums of $943.60 and $257.47 for several unexplained charges in the Rockfall contract. Accordingly, the court awarded the plaintiff $23,983 in damages and rendered judgment thereon. This appeal followed.

On appeal, the defendant claims that the court incorrectly found that it breached the contract. The defendant also claims the court improperly calculated damages. We disagree.

We first set forth the general rule regarding the review of breach of contract claims. "The determination of whether a contract has been materially breached is a question of fact that is subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Although a finding of breach of contract is subject to the clearly erroneous standard of review, whether the court chose the correct legal standard to initially analyze the alleged breach is a question of law subject to plenary review." (Citation omitted; internal quotation marks omitted.) *Western Dermatology Consultants*, *P.C.* v. *VitalWorks, Inc.*, 146 Conn. App. 169, 180, 78 A.3d 167 (2013), aff'd, 322 Conn. 541, 153 A.3d 574 (2016).

With respect to the defendant's claim that expert testimony was required in order for the plaintiff to prevail on its breach of contract claim, "as a general matter, [whether] expert testimony is required to support a particular type of claim [is] a question of law that we review de novo." *R.T. Vanderbilt Co.* v. *Hartford Accident & Indemnity Co.*, 171 Conn. App. 61, 110, 156 A.3d 539 (2017), aff'd, 333 Conn. 343, 216 A.3d 629 (2019). Once we resolve the question of whether expert testimony is required, we review for clear error the question of whether the trial court drew a reasonable inference. See *State* v. *Ray*, 290 Conn. 602, 631 n.17, 966 A.2d 148 (2009). On the issue of damages, "[t]he trial court has broad discretion . . . and its decision will not be overturned unless it is clearly erroneous." *O & G Industries, Inc.* v. *All Phase Enterprises, Inc.*, 112 Conn. App. 511, 528, 963 A.2d 676 (2009).

I

The defendant claims that the trial court improperly found that the defendant's unworkmanlike performance proximately caused the concrete to crack. First, the defendant argues that expert testimony was required to prove that the cracks in the concrete were proximately caused by the defendant's defective work. Second, it claims that, even if expert testimony was not required, the court drew an unreasonable inference as to the cause of the cracking. We disagree.

"[E]xpert testimony . . . serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard. . . . Expert testimony is required when the question involved goes beyond the field of the ordinary knowledge and experience of judges or jurors." (Internal quotation marks omitted.) *Osborn* v. *Waterbury*, 333 Conn. 816, 826, 220 A.3d 1 (2019). "When a topic requiring special experience of an expert forms a main issue in the case, the evidence on that issue must contain expert testimony or it will not suffice. . . . In cases involving claims of professional negligence . . . expert testimony is essential to establish both the standard of skill and care applicable and that the defendant failed to conform to the standard, as these matters are outside the knowledge of the jury." (Citations omitted; internal quotation marks omitted.) *Matyas* v. *Minck*, 37 Conn. App. 321, 326–27, 655 A.2d 1155 (1995). Expert testimony is not required, however, if "the negligence is so gross as to be clear to a layperson." *Osborn* v. *Waterbury*, supra, 827.

"[T]he exception to the general rule that requires that expert testimony be used to prove professional negligence . . . provides that expert testimony may be dispensed with when there is such gross want of care or skill as to afford, of itself, an almost conclusive inference of negligence."[7] (Internal quotation marks omitted.) *Matyas* v. *Minck*, supra, 37 Conn. App. 328. Whether an expert is required in such a case will depend on the facts of each case and the level of technical complexity at issue. See, e.g., *Cackowski* v. *Jack A. Halprin, Inc.*, 133 Conn. 631, 635–36, 53 A.2d 649 (1947) (expert testimony is not essential where negligent work of builders did not present "an intricate engineering problem" and jury could use common knowledge to find negligence).

We conclude that the present case falls within the recognized exception to the general rule requiring expert testimony in cases alleging professional negligence or a breach of the implied duty to perform in a workmanlike manner. See *Matyas* v. *Minck*, supra, 37 Conn. App. 328. The court in this case found that there was sufficient evidence demonstrating that the work was performed in an unworkmanlike manner. For the reasons that follow, it did not need expert testimony to reach that conclusion.

The facts before the court demonstrated that the defendant contracted with the plaintiff to replace a set of concrete stairs for long-term use. The defendant was the only party responsible for replacing the stairs, including the choice and installation of the concrete. The defendant performed the work in August, 2014, and cracks began to appear as early as January 22, 2015, less than six months after the work was completed.

Multiple witnesses testified about the extent of the cracking. The court found that the cracking was significant in degree,[8] describing the photographic evidence as depicting "long, deep, and obvious fissuring of a portion of the tread and riser . . . ." The court also found that, due to the cracking, the stairs had to be blocked off for safety purposes. Schlehofer also testified that cracking continued to appear "throughout the winter." On the basis of that evidence, and in the absence of any evidence supporting the defendant's claim that the cracks were caused by some sort of significant impact, expert testimony was not required for the court to determine whether the defendant breached the contract by failing to perform in a workmanlike manner.

The defendant argues that the court could not infer unworkmanlike performance from the appearance of cracking within six months, because "five months in a construction case . . . is . . . not so short as to permit a res ipsa style proof of [a] breach [of contract] on no other ground than the mere existence of harm to property." That claim, however, mischaracterizes the court's decision, which was based on the entirety of the evidence presented at trial.

The defendant also cites a number of cases in support of his claim that the plaintiff was required to present expert testimony in this case. In *D'Esopo & Co.* v. *Bleiler*, 13 Conn. App. 621, 625–26, 538 A.2d 719 (1988), for instance, a builder claimed that he did not negligently install a subfloor because he built it to conform to specifications provided by the homeowners, which ultimately caused floor tiles to crack. This court concluded that in the absence of expert testimony demonstrating that the quality of the work itself, rather than the defective specifications, caused the cracks, the fact finder could not have inferred that the builder had performed negligently. Id. Similarly, in *Empire Paving, Inc.* v. *Staddle Brook Development, Inc.*, Superior Court, judicial district of New Haven, Docket No. 381732 (January 28, 1998), two parties had performed work on a public road. In the absence of expert testimony, the court concluded it was not clear whether later developing cracks that required the road to be torn up and replaced were caused by the plaintiff's flawed paving work or the road base on which the pavement was laid down.

In *Matyas* v. *Minck*, supra, 37 Conn. App. 328–29, another case on which the defendant relies, the jury was asked to review technically complex design specifications to assess whether a septic system was constructed negligently. The plaintiffs in that case introduced exhibits consisting of a lot subdivision map and a septic system design. Id., 328. They contended that "the jury was qualified to read maps and drawings . . . ." Id. This court disagreed, noting that "the maps

and drawings [in question] are technical documents. The process of understanding an engineered design is complex." Id., 329.

In each of these cases, expert testimony was required either because the fact finder was asked to assess complex technical issues or to determine which one of several parties, if any, was responsible for the cause of defects. In this case, the court did not need to resolve such issues. The evidence overwhelmingly demonstrated plain and obvious defects in the concrete. Severe cracking appeared very shortly after the stairs were completed and continued to worsen even after the defendant attempted repairs. No technically complex design specifications were at issue, and the defendant alone built the stairs. There was no need for the court to consider whether any other party was at fault. Under these circumstances, the court did not need expert testimony to find that the defendant breached the contract.

The defendant also makes the related claim that, even if no expert testimony was required, the court's inference was unreasonable because it failed to take into account the possibility that the cracking may have been caused by a snowplow or some other significant impact. Alluding to the speculative nature of the claim, the court aptly noted that the defendant "presented no admissible evidence to support that hypothesis."[9] On the contrary, cracking continued to occur throughout the winter and the period in which the defendant performed repair work, which is inconsistent with the defendant's sudden impact theory.[10] On the basis of the record before us, we conclude the court reasonably inferred that the defendant breached the contract by virtue of its unworkmanlike performance.

## II

The defendant next claims that the trial court improperly calculated damages because the plaintiff failed to prove that the defendant's breach of contract required the faulty stairs to be replaced instead of repaired. We disagree.

"In reviewing a trial court's award of compensatory damages, we have stated that [t]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . Mathematical exactitude in the proof of damages is often impossible, but the plaintiff must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate." (Citations omitted; internal quotation marks omitted.) *Bhatia* v. *Debek*, 287 Conn. 397, 418–19, 948 A.2d 1009 (2008). "It is axiomatic that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed." (Internal quotation marks

omitted.) *FCM Group, Inc.* v. *Miller,* 300 Conn. 774, 804, 17 A.3d 40 (2011).

The defendant's sole argument in its briefs to this court is that the concrete stairs could have been repaired and that the only reason they were replaced was to bring them into compliance with the code. It asserts that "the court should not have awarded costs for the replacement of the stairs because the cracked concrete—[the defendant's] only source of liability— was not the reason for [the plaintiff's] decision to procure replacement of the stairs. The reason why the stairs were replaced was for the alleged code violations, and [the defendant] was found by the court to be free from liability for those violations."

This argument fails because the court found that replacement of the stairs was necessary to resolve the cracking issue alone and that simply repairing them would not have sufficed. The court found that "it was *necessary* for the plaintiff to have the faulty stairs . . . demolished and removed, given the cracking concrete problem *as well as* . . . the dimensions . . . ." (Emphasis added.) We interpret the court's finding to mean that both the faulty concrete and the code violations independently necessitated replacement. See footnote 5 of this opinion. That finding is supported by the record. The record shows that there was substantial cracking in the concrete, which the court described as "serious" and "long, deep, and obvious." See footnote 8 of this opinion. The court found that, even after the defendant performed repair work on May 8, 2015, "new lines of fracturing were appearing" mere days later. Schlehofer also testified that the defendant's repair work did not fix all of the cracks. The defendant did not refute this evidence.[11] We, therefore, conclude that it was not clearly erroneous for the trial court to find that the cracking alone required the stairs to be replaced.

The defendant concedes in its brief that it would be liable for any damages stemming specifically from the defects in the concrete. The plaintiff presented sufficient evidence of the cost of replacement. Accordingly, the defendant was liable in damages for the expenses the plaintiff incurred to replace the stairs.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff did not pay the bill, and the defendant did not pursue the charge further.

[2] The defendant alleged four special defenses: (1) it had performed the work in accordance with the terms of the contract that required it to replace the stairs and sidewalk and salvage and reattach the railings; (2) the work was performed in a workmanlike manner consistent with the agreed upon contract; (3) the plaintiff's remedies were limited to the contract's express terms; and (4) the terms of the agreement required the defendant to reuse the existing stair railings, which required the defendant to replace stairs using the dimensions of the original stairs, and the plaintiff could not impose additional conditions on the defendant after having inspected, accepted, and paid for the work. The plaintiff denied all four special defenses.

[3] Racki explained that shaling occurs when "the concrete breaks up and rocks that were underneath or in the concrete come out and are kind of spread over the top of the concrete."

[4] Steven Fradianni testified as a lay witness only.

[5] The court found that "it was necessary for the plaintiff to have the faulty stairs constructed by the defendant demolished and removed, given the cracking concrete problem *as well as* the fact that the dimensions of the risers, treads, and railings violated the [code]." (Emphasis added.)We interpret the court's finding to mean that the court found that the defective concrete *and* the code violations were each independent and sufficient justifications for replacing rather than just repairing the stairs.

[6] At trial, the plaintiff placed into evidence the purchase orders it executed with Rockfall.

[7] As with a professional negligence case, a breach of contract case alleging a violation of the implied duty to perform in a workmanlike manner also generally requires expert testimony, unless it falls within a recognized exception to that rule. See *Matyas* v. *Minck*, supra, 37 Conn. App. 329 (requiring expert testimony to prove breach of standard of care in contract action).

[8] The court found that the concrete developed "significant fracturing" and "serious cracking."

[9] The defendant argues that the court failed to consider Steven Fradianni's testimony that he believed a dent in the railing indicated it had been struck. As previously noted, however, Fradianni admitted that he lacked personal knowledge of the damage and could only testify about what he allegedly heard from others.

The defendant also argues that the fact that a welder performed work on the stairway handrail on January 31, 2015, supports its claim that an impact to the handrail caused the cracking. The court found that the plaintiff did not authorize this work and that it was not clear why a welder had been sent to perform work on the handrail.

[10] The defendant argues that the plaintiff's use of salt may have caused damage to the steps because the concrete later installed by Rockfall experienced salt damage, necessitating further repairs. The defendant presented no evidence, however, concerning the plaintiff's use of salt in early 2015 or the nature of the damage Rockfall repaired.

[11] The only support the defendant provides for its claim that the plaintiff could have had the stairs repaired is Racki's testimony that, in 2016, Rockfall was in the process of fixing salt damage in the new concrete it installed with a special polymer solution. We will not speculate as to the relevance of these repairs to the damage at issue in this case. See footnote 10 of this opinion.

[12] On appeal, the defendant challenges, and has briefed, only the court's finding that it was necessary to replace the stairs. It does *not* challenge, and did not brief, any other issues concerning the damages award. Consequently, we need not address any separate, abandoned claims concerning the court's calculation of damages. See *Katsetos* v. *Nolan*, 170 Conn. 637, 641, 368 A.2d 172 (1976) (claims not briefed are considered abandoned).