******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# COSMO IADANZA *v.* MOHAMMED TOOR ET AL.
## (AC 45890)

Bright, C. J., and Suarez and Harper, Js.

*Syllabus*

The plaintiff landlord and the defendant tenant entered into a lease agreement with an option to purchase certain real property occupied by the defendant. Each party claimed that the other had breached the lease agreement, and the parties agreed to resolve their competing claims by way of a stipulated judgment, which provided, inter alia, that judgment of possession would enter for the plaintiff with a final stay of execution based upon certain conditions, including that the defendant could purchase the property if he deposited a certain sum into his attorney's trust account by an agreed upon deadline and that time was of the essence. Failure to make the deposit would void the defendant's right to purchase the property and the plaintiff could immediately obtain a summary process execution for possession without any additional court hearings. Shortly after the stipulated judgment was rendered, the plaintiff removed from an unoccupied accessory apartment several appliances that he believed he owned. The defendant complained about their removal and the plaintiff ultimately returned them. Shortly thereafter, the plaintiff filed an affidavit of noncompliance in which he averred that the defendant had materially breached the stipulated judgment by not making the deposit in accordance with the terms of the stipulation, and he requested that the court issue a summary process execution. After a hearing, the court granted the plaintiff's request and ordered the clerk's office to issue the execution, finding that the removal of the appliances was not a material violation of the stipulation. On the defendant's appeal, *held* that the defendant could not prevail on his claim that the trial court improperly found that the plaintiff's removal of the appliances was not a material breach of the stipulated judgment that relieved him of his obligation to make the required deposit by the deadline: the court considered and applied the standards for materiality set forth in § 241 of the Restatement (Second) of Contracts and approved by the Supreme Court in *Bernstein* v. *Nemeyer* (213 Conn. 665), and, although the court did not specifically identify the standards of materiality it applied when assessing the plaintiff's removal of the appliances, it did plainly state that it found no material breach under the cases cited by the defendant; moreover, under the facts and circumstances of this case, which included the undisputed fact that the appliances were not mentioned in the stipulation, and there was no evidence of their value, this court could not say that it was clearly erroneous for the trial court to find that the removal of the appliances did not materially breach the stipulated judgment, as the temporary removal by the plaintiff of appliances from the accessory

apartment did not deprive the defendant of a substantial benefit for which he had clearly bargained and which he had every reason to expect, and the removal of a limited number of used appliances did not substantially impact the nature of the stipulation even if wrongful, and, as such, the defendant was not relieved of his obligation to deposit the funds by the deadline.

Argued January 31—officially released July 23, 2024

*Procedural History*

Summary process action brought to the Superior Court in the judicial district of Stamford-Norwalk, Housing Session, where the named defendant filed a counterclaim; thereafter, the action was withdrawn as against the defendant Jane Doe et al.; subsequently, the matter was transferred to the Superior Court in the judicial district of Stamford-Norwalk, where the court, *Hon. Robert L. Genuario*, judge trial referee, rendered judgment in accordance with the parties' stipulation; thereafter, the court, *Hon. Robert L. Genuario*, judge trial referee, granted the summary process execution for possession filed by the plaintiff and denied the named defendant's motion to reargue, and the named defendant appealed to this court. *Affirmed.*

*Ridgely Whitmore Brown*, for the appellant (named defendant).

*Joseph F. Mulvey*, for the appellee (plaintiff).

*Opinion*

HARPER, J. This appeal arises from a stipulated judgment in an action by the plaintiff landlord, Cosmo Iadanza, against the defendant tenant, Mohammed Toor,[1] for breach of contract, serious nonpayment of

---

[1] The plaintiff also named Shagufta Toor as a defendant in the action but only with respect to count two of the operative amended complaint, which seeks immediate possession of the property allegedly occupied by Shagufta Toor and Mohammed Toor. Shagufta Toor is not a party to this appeal. The original complaint also named various other defendants, against whom the action was withdrawn or who are not participating in this appeal. For clarity, Mohammed Toor will be referred to as the defendant throughout this opinion.

rent,[2] and fraudulent misrepresentation relative to the defendant's tenancy at the residential property known as 501 Woodbine Road in Stamford (property).[3] According to the stipulation, judgment of possession entered in favor of the plaintiff "with a final stay of execution based upon" several conditions pertaining to an option the defendant had to purchase the property. The conditions established, among other things, that the defendant would be able to purchase the property for $950,000, provided that he deposited "with [his counsel] in trust pursuant to the terms of agreement the sum of $47,500 by August 26 [2022] [at] 4 p.m. eastern daylight time" and then satisfied certain conditions with respect to obtaining financing and closing by a date certain, and that time was of the essence "for all actions and requirements in the stipulated agreement." They further established that "[f]ailing to make the deposit will null and void the defendant's right to purchase the property, and the plaintiff may immediately file an affidavit stating this fact and immediately obtain a summary process execution for possession without any additional court hearings."

The dispositive issue in this appeal is whether the trial court properly ordered a summary process execution for possession to issue after the defendant failed to make the $47,500 deposit in accordance with the

___

[2] The cause of action for "serious nonpayment of rent" is an exception to the state residential "eviction moratorium" issued by Governor Ned Lamont in relation to his proclamation of a state of emergency due to the COVID-19 outbreak in the United States and Connecticut. See Executive Order No. 10A (3) (d) (February 8, 2021).

[3] The contract is a November 1, 2019 lease agreement pertaining to the property, executed by the parties on October 15, 2019. The plaintiff filed this case as a summary process action and it was transferred from housing court to the civil court for adjudication. The defendant asserted special defenses alleging, among other things, that the plaintiff breached his obligations under the lease, and he filed a counterclaim seeking specific performance.

terms of the stipulated judgment.[4] The defendant claims that the plaintiff materially breached the stipulated judgment prior to the August 26, 2022 deadline and that, consequently, the defendant's obligation to make the deposit by that time had been excused. As such, he maintains that the plaintiff was not entitled to the execution. We disagree with the defendant and, accordingly, affirm the judgment of the trial court ordering the summary process execution.[5]

The following undisputed facts and procedural history are relevant to our resolution of this appeal. In an amended complaint, the plaintiff alleged that he and the defendant entered into a "Lease Agreement with Option to Purchase [the property]" on October 15, 2019. Each party claimed that the other had breached the lease agreement, and the parties agreed to resolve their

---

[4] The trial court's decision is an appealable final judgment. This appeal presents circumstances similar to those in *Cathedral Green, Inc.* v. *Hughes*, 174 Conn. App. 608, 166 A.3d 873 (2017), in which this court observed: "Although ordinarily an appeal will not lie from an execution issued in a summary process action because the execution merely effectuates the judgment of possession and, thus, is not itself an appealable order or judgment; see *Iannotti* v. *Turner*, 32 Conn. Supp. 573, 575, 346 A.2d 114, cert. denied, 169 Conn. 709, 344 A.2d 357 (1975); we construe the present appeal as more analogous to a challenge to the summary enforcement of a judgment, which, even in the case of a stipulated judgment, we have found constitutes an appealable final judgment. See *Bernet* v. *Bernet*, 56 Conn. App. 661, 664, 745 A.2d 827, cert. denied, 252 Conn. 953, 749 A.2d 1202 (2000)." *Cathedral Green, Inc.* v. *Hughes*, supra, 610 n.2.

[5] The defendant also claims that the court improperly "fail[ed] to consider and conclude that the plaintiff waived [the] time [is] of the essence requirement . . . ." That claim, however, is predicated on the defendant's contention that certain acts by the plaintiff constituted "a material breach which excused [the defendant's] performance [under the stipulation] as a matter of law, at least as far as time is of the essence is concerned." At oral argument before this court, the defendant's counsel conceded that, if we conclude that the court properly found that the plaintiff did not materially breach the stipulated judgment, that conclusion would be dispositive of this appeal. Because we conclude that the court properly found that the plaintiff did not materially breach the stipulated judgment, we do not reach the defendant's second claim.

competing claims by way of a stipulated judgment. At a hearing on August 17, 2022, the court, *Hon. Robert L. Genuario*, judge trial referee, read the following pertinent terms from the parties' agreement[6] into the record:

"One, judgment of possession may enter in favor of the plaintiff with a final stay of execution based upon the following conditions.

"Two, for all actions and requirements in the stipulated agreement time is of the essence.

"Three, the defendant may purchase [the property] which is the subject premises of the litigation for the sum of $950,000. . . .

"[F]our, the defendant is to deposit with [his counsel] in trust pursuant to the terms of agreement the sum of $47,500 by August 26 [2022] [at] 4 p.m. eastern daylight time. . . . Failing to make the deposit will null and void the defendant's right to purchase the property, and the plaintiff may immediately file an affidavit stating this fact and immediately obtain a summary process execution for possession without any additional court hearings.

\* \* \*

"Twelve, the parties to this agreement each state: (A) they were represented by counsel of their own choosing; (B) they had a full opportunity to discuss and consider all aspects and ramifications of this agreement; (C) they each acknowledge they were canvassed by the court and given an opportunity to inquire of the court as to any of their concerns and given a copy of

---

[6] The court explained that the agreement was "captured in a typed document with some changes that we have made this morning. The typed document was prepared by [the plaintiff's counsel], [and] the changes were provided to the court by both [the plaintiff's counsel] and [the defendant's counsel] on behalf of their clients."

this stipulated judgment . . . (D) they acknowledge each waiving their rights to have a trial on the merits of each party's claims and causes of action; (E) under all of the circumstances of this matter each party finds this . . . stipulation fair, just, and reasonable; [and] (F) each party states they have signed this agreement knowingly as their own free act and deed, [and] neither party was under any undue duress, pressure, or undue influence. . . .''

After the court read the agreement into the record, it solicited questions from the parties, and the defendant inquired about securing a key to an unoccupied accessory apartment to which he had no access. Following further discussions with the parties and their counsel about this issue, the court stated that "[the plaintiff] [will] today search for any keys he has to the accessory apartment and if he has them [he will provide] them to [the defendant]. If he cannot locate a key [he will retain] a locksmith by . . . Monday [August 22, 2022] to open the accessory apartment [and] provide [the defendant] with a key. Within forty-eight hours of [the defendant] receiving the key [the defendant] will have the following option: he can cancel the agreement completely if he's not satisfied with the condition of the accessory apartment in which case . . . he will vacate the property within thirty days. . . . If he is satisfied with the condition of the property the agreement will remain in force as previously read." The court explained that "what I do not want to have is . . . negotiations over whether or not there should be a $10,000 adjustment because there's a hole in the wall. . . . You either buy the property for [$950,000] or you don't." The court then reiterated the terms with respect to the key and specified that "[a]ll other terms and adjustments including the cost if [the defendant] doesn't vacate will remain in effect or if [the plaintiff does not] hear from [the defendant] within forty-eight hours . . . the agreement will

remain in full force and effect.'' The parties and their counsel confirmed their understanding and acceptance of these additional terms, and the parties swore under oath that they understood and agreed to the terms of the stipulation in its entirety. The court then rendered a ''judgment of possession in favor [of] the plaintiff subject to the terms of the stipulation that I have read into the record.''

The plaintiff delivered to the defendant's counsel the key to the unoccupied accessory apartment on August 22, 2022. Prior to doing so, he had removed from the accessory apartment certain appliances he believed he owned. The defendant did not cancel the agreement when he became aware that the appliances had been removed. Instead, he complained, through counsel, about their removal, and the plaintiff ultimately returned them. In the meantime, however, the defendant had not deposited $47,500 in trust with his attorney by 4 p.m. on August 26, 2022.

On August 29, 2022, the plaintiff filed an affidavit of noncompliance in which he averred that the defendant had materially breached the stipulated judgment by not making the deposit in accordance with the terms of the stipulation, and he requested that the court issue a summary process execution. The defendant did not oppose the plaintiff's affidavit or file one of his own. Instead, on September 8, 2022, he filed a verified lockout complaint and application for temporary injunction predicated on his contention that the plaintiff violated both the stipulation and General Statutes § 47a-43[7] by removing the appliances.

_____

[7] General Statutes § 47a-43 provides in relevant part: ''(a) When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same, or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand, or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises

On September 26, 2022, the court held a hearing regarding the plaintiff's request for an execution and the defendant's lockout complaint. At the hearing, the defendant's counsel argued that the plaintiff's removal of the appliances from the accessory apartment materially breached the stipulated judgment and excused the defendant's obligation to make the $47,500 deposit by the August 26, 2022 deadline but that the defendant had the funds and still wished to proceed with the transaction. The plaintiff, however, did not. He maintained that the execution should issue. The court granted the plaintiff's request and ordered the clerk's office to issue the execution. It explained that, "[w]ith regard to the removal of the appliances, what is clear is that no appliances were removed from the main residence where [the defendant] lived. I do not believe that the removal of the appliances, whether appropriately thought out or not, relieved [the defendant] of the obligation to post the $47,500 by August 26.

"The transcript is clear that time is of the essence, and the transcript is clear that if the funds were not posted with [the defendant's counsel] by August 26, that the plaintiff would be entitled to an execution upon the filing of an affidavit . . . . That affidavit was filed on August 29.

"Accordingly, the court finds that the plaintiff is entitled to an execution . . . ." The court "offer[ed] no opinion as to whether or not [the plaintiff's removal of the appliances] was in violation of any provisions of the stipulation, other than to say that it was not a material violation of the stipulation." It also "observe[d] that the original stipulation was based upon a writing that was prepared by the parties and reviewed by the parties

---

or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court. . . ."

before the approval of that stipulation was rendered by the court and that that writing was available to the parties and . . . contained all of the dates that money had to be posted . . . . So, the parties were well aware of it, the money was not posted, [and] the plaintiff is entitled to an execution.”

On September 27, 2022, the defendant filed a motion to reargue the “[j]udgment for the plaintiff and the related order that execution shall issue . . . .” In that motion, he recited the “multifactor test” for determining whether a breach is material, as “set forth in [§ 241 of] the Restatement (Second) of Contracts” and “endorsed” by our Supreme Court in *Bernstein* v. *Nemeyer*, 213 Conn. 665, 672, 570 A.2d 164 (1990), and argued that its application to the undisputed facts in this case supported the conclusion that the removal of the appliances from the accessory apartment was a material breach of the stipulated judgment. (Internal quotation marks omitted.) The court denied the defendant’s motion to reargue on October 3, 2022.

In its order denying the defendant’s motion to reargue, the court stated that it had, “at the prior proceeding, ruled in favor of the plaintiff finding no material breach that relieved the defendant from the obligation to post the down payment.” The court denied the motion to reargue because it found, among other things, that there was no “breach of the stipulation, let alone a material breach.” It explained that “[t]he stipulation did not contain any reference either express or implied as to whether these appliances were included in the sale. The plaintiff removed the washer, dryer, and refrigerator, presumably used, believing they were his, not a part of the sale and not needed in the unoccupied accessory apartment during the interim period” and that it was “unaware, nor was there any evidence, of customary inclusion of such appliance[s] in a contract for the sale of residential real estate.”

The court further explained that, "under the cases cited by the defendant and the standards set forth in those cases, the court finds no material breach. The removal of a limited number of used appliances, with no evidence of their value and not mentioned in the stipulation, did not substantially impact the nature of the $950,000 bargain even if wrongful. The defendant could have been otherwise compensated. On the other hand, the timing of the required payments as expressly required was at the essence of the stipulation. The plaintiff wanted to be sure he had a deal and that it was moving forward in an orderly and expedited manner or he wanted possession of the property back. This is what the parties expressly agreed to. The defendant has breached those terms and the plaintiff is entitled to possession."[8] This appeal followed.

The defendant claims on appeal that the court improperly found that the plaintiff's removal of the appliances from the accessory apartment was not a material breach of the stipulated judgment that relieved him of his obligation to deposit the $47,500 by August 26, 2022. Specifically, he argues that (1) the stipulated judgment was ambiguous and the court improperly concluded that it did not prohibit the removal of the appliances from the accessory apartment and (2) the court improperly concluded that, even if the stipulated judgment prohibited removal of the appliances, any such breach was not material. In response, the plaintiff argues that (1) the defendant raised the ambiguity argument for the first time on appeal and it is not properly

---

[8] The court also addressed and rejected the defendant's argument that the plaintiff's removal of the appliances constituted a lockout under applicable law. Although the defendant makes the single assertion in his opening brief to this court that "the actions of the plaintiff are recognized . . . as wrongful under the lockout statute," he has not raised this as an issue on appeal or briefed it beyond this assertion. As such, we do not address it. See *JPMorgan Chase Bank*, *National Assn.* v. *Essaghof*, 221 Conn. App. 475, 485, 302 A.3d 339, cert. denied, 348 Conn. 923, 304 A.3d 445 (2023).

preserved, and (2) the court properly concluded that any breach by the plaintiff was not material. We need not decide whether the defendant's ambiguity argument is properly preserved or whether the court properly concluded that the stipulated judgment did not prohibit the removal of the appliances from the accessory apartment, however, because we agree with the plaintiff that the court properly concluded that, even if the removal of the appliances was a breach, any such breach was not material. See also footnote 3 of this opinion.

We begin our analysis by setting forth the legal principles relevant to our resolution of this claim and our standard of review. "By their nature, stipulated judgments are the creation of the parties and, consequently, must be given effect according to the parties' terms. [A] stipulated judgment is not a judicial determination of any litigated right . . . [and] may be defined as a contract . . . . The essence of the judgment is that the parties to the litigation have *voluntarily entered into an agreement* setting their dispute or disputes at rest . . . . [A stipulated] judgment is different in nature from a judgment rendered on the merits because it is primarily the act of the parties rather than the considered judgment of the court. . . . [P]arties generally enter into a stipulated judgment only after careful negotiation has produced agreement on their precise terms." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Customers Bank* v. *CB Associates, Inc.*, 156 Conn. App. 678, 687–88, 115 A.3d 461 (2015).

The issue here is whether the court properly concluded that the plaintiff's removal of the appliances from the unoccupied accessory apartment was not a material breach of the stipulated judgment and thus did not excuse the defendant's failure to deposit with his counsel $47,500 by the August 26, 2022 deadline. See *Bernstein* v. *Nemeyer*, supra, 213 Conn. 672–73 ("[i]t

follows from an uncured material failure of performance that the other party to the contract is discharged from any further duty to render performances yet to be exchanged"). "The determination of whether a contract has been materially breached is a question of fact that is subject to the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Although a finding of breach of contract is subject to the clearly erroneous standard of review, whether the court chose the correct legal standard to initially analyze the alleged breach is a question of law subject to plenary review." (Internal quotation marks omitted.) *Regional School District 8* v. *M & S Paving & Sealing, Inc.*, 206 Conn. App. 523, 531–32, 261 A.3d 153 (2021).

"In *Bernstein* v. *Nemeyer*, [supra, 213 Conn. 672], our Supreme Court approved the multifactor standards for materiality contained in § 241 of the Restatement (Second) of Contracts. In determining whether a failure to render or to offer performance is material, the following circumstances are significant: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and] (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing. . . .

"The standards of materiality [are] to be applied in the light of the facts of each case in such a way as to further the purpose of securing for each party his expectation of an exchange of performances. [Section 241 of the Restatement (Second) of Contracts] therefore states circumstances, not rules, which are to be considered in determining whether a particular failure is material." (Citation omitted; internal quotation marks omitted.) *Strouth* v. *Pools by Murphy & Sons, Inc.*, 79 Conn. App. 55, 60, 829 A.2d 102 (2003).

The defendant does not challenge the facts upon which the court based its conclusion that the plaintiff's removal of the appliances from the unoccupied accessory apartment was not a material breach of the stipulated judgment.[9] Rather, he argues that the court "did not apply the correct standard with respect to the issue . . . ." Specifically, he argues that the court improperly "evaluate[d] the materiality of the breach by a simple comparison of the value of the entire property against the value or the replacement cost of the appliances removed"[10] when it was "required [instead] to undertake the analysis under the Restatement [(Second) of Contracts] as required by *Bernstein*." We disagree with the defendant. Our plenary review of the court's order denying the defendant's motion to reargue reveals that it considered and applied the standards for materiality our Supreme Court approved in *Bernstein*. See *Wheelabrator Bridgeport, L.P.* v. *Bridgeport*, 320 Conn. 332, 355, 133 A.3d 402 (2016) (interpretation of trial court judgment is question of law).

---

[9] Indeed, at oral argument before this court, the defendant's counsel maintained that "there were no underlying facts in dispute."

[10] We note that the defendant argues that the court's "conclusion that any breach was not material because the claimed value or replacement cost of the removed appliances was only $10,000 as compared to the purchase price of $950,000 was not legally and logically correct." It is not clear to us what the foundation for the $10,000 figure is. There is no citation in the defendant's brief to support this assertion and the court's order clearly states that there was "no evidence of [the appliances'] value . . . ."

It is well settled that "a judicial opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding." (Internal quotation marks omitted.) *Tracey* v. *Miami Beach Assn.*, 216 Conn. App. 379, 395, 288 A.3d 629 (2022), cert. denied, 346 Conn. 919, 291 A.3d 1040 (2023). "Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The construction of a judgment is a question of law for the court. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The judgment should admit of a consistent construction as a whole. . . . To determine the meaning of a judgment, we must ascertain the intent of the court from the language used and, if necessary, the surrounding circumstances." (Internal quotation marks omitted.) *Wheelabrator Bridgeport, L.P.* v. *Bridgeport*, supra, 320 Conn. 355.

Although the court did not specifically identify the standards of materiality it applied when assessing the plaintiff's removal of the appliances, it did plainly state that "under the cases cited by the defendant and the standards set forth in those cases the court finds no material breach." As set forth herein, the cases the defendant cited include *Bernstein*, which articulated the standards set forth in § 241 of the Restatement (Second) of Contracts. See *Bernstein* v. *Nemeyer*, supra, 213 Conn. 672 n.8. We glean from the court's plain statement, therefore, that it evaluated the alleged breach according to the standards our Supreme Court approved in *Bernstein*.

Moreover, the court's specific findings shed light on which factors, or standards, it considered and found significant. Its findings reflect that the court considered the criteria set forth in § 241 (a), (b), (c) and (e) of the

Restatement (Second) of Contracts to reach its conclusion. See, e.g., *Strouth* v. *Pools by Murphy & Sons, Inc.*, supra, 79 Conn. App. 61 (discerning standards of materiality trial court applied from findings set forth in memorandum of decision). Specifically, the court found that (1) "[t]he stipulation did not contain any reference either express or implied as to whether these appliances were included in the sale," (2) "[t]he plaintiff removed the washer, dryer, and refrigerator, presumably used, believing they were his, not a part of the sale and not needed in the unoccupied accessory apartment during the interim period," (3) "[t]he removal of a limited number of used appliances, with no evidence of their value and not mentioned in the stipulation, did not substantially impact the nature of the $950,000 bargain even if wrongful," (4) "[t]he defendant could have been otherwise compensated," and (5) "the timing of the required payments as expressly required was at the essence of the stipulation. The plaintiff wanted to be sure he had a deal and that it was moving forward in an orderly and expedited manner or he wanted possession of the property back."

The court therefore considered (a) the extent to which the injured party (the defendant) would be deprived of a benefit he reasonably expected, (b) the extent to which the injured party (the defendant) could have been adequately compensated for the benefit of which he would have been deprived, (c) the extent to which the party failing to perform (the plaintiff) would suffer forfeiture and (e) the extent to which the behavior of the party failing to perform (the plaintiff) comported with the standards of good faith and fair dealing when it concluded that the removal of the appliances did not materially breach the stipulation. See *Bernstein* v. *Nemeyer*, supra, 213 Conn. 672 n.8. The defendant's argument that the court did not consider any of these factors, and thus did not apply the proper standard in

evaluating the materiality of the alleged breach, therefore fails.

Further, under the facts and circumstances of this case, which include the undisputed fact that the appliances are not mentioned in the stipulation, we cannot say that it was clearly erroneous for the court to find that the removal of the appliances from the unoccupied accessory apartment did not materially breach the stipulated judgment. See *Strouth* v. *Pools by Murphy & Sons, Inc.*, supra, 79 Conn. App. 60. The defendant voluntarily entered into the stipulated judgment, and his only stated concern with respect to the accessory apartment was that he be provided with a key in order to access it, which he was. As such, the temporary removal by the plaintiff of appliances from the accessory apartment did not deprive the defendant of a "substantial benefit for which [he] had clearly bargained and which [he] had every reason to expect." *Bernstein* v. *Nemeyer*, supra, 213 Conn. 672; see also *669 Atlantic Street Associates* v. *Atlantic-Rockland Stamford Associates*, 43 Conn. App. 113, 127–28, 682 A.2d 572 (trial court's finding that plaintiff's failure to meet environmental obligations did not deprive defendant of benefit it reasonably expected where parties contemplated transfer of environmentally contaminated properties was not clearly erroneous), cert. denied, 239 Conn. 949, 686 A.2d 126 (1996), and cert. denied, 239 Conn. 950, 686 A.2d 126 (1996). We agree with the court that "[t]he removal of a limited number of used appliances, with no evidence of their value and not mentioned in the stipulation, did not substantially impact the nature of the $950,000 bargain even if wrongful." As such, the defendant was not relieved of his obligation to deposit the $47,500 by the August 26, 2022 deadline, and, when he failed to do so, the plaintiff was entitled to the execution.

The judgment is affirmed.

In this opinion the other judges concurred.